IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EMANUEL JOHNSON, JR., et al.<br>on behalf of themselves and as<br>Representatives of a Class of all<br>Others Similarly Situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>JANET RENO,<br>Attorney General of the United<br>States of America,<br><br>    Defendant. | FILED<br><br>APR 3 0 2001<br><br>NANCY MAYER WHITTINGTON CLERK<br>U.S DISTRICT COURT<br><br>Civ. No. 93-0206 TFH<br>Hon. Thomas F. Hogan |

## MEDIATION SETTLEMENT AGREEMENT

On October 14, 1993, the District Court for the District of Columbia approved a Settlement Agreement entered into by the FBI and a class of black Special Agents certified by the Court. The Settlement Agreement resolved a number of allegations of racial discrimination against black Special Agents in the FBI's employment policies and practices. Pursuant to the Settlement Agreement, the FBI provided a variety of retroactive relief to the class including awarding promotions and transfers to black Special Agents, among other things. The FBI has also provided prospective relief to the class, specifically including establishing procedures by which the FBI would revise certain employment policies. The Settlement Agreement, by its terms, was set to expire on October 14, 1998.

Based on a joint motion by the parties, the Court approved a Settlement Agreement Amendment ("Amendment") on May 17, 2000, applied retroactively to October 14, 1998.[1] The

---

[1] The parties had sought previous extensions of the Agreement to enable the parties to develop the details of the Amendment. The most recent extension had expired March 1, 2000.

EXHIBIT
D2
CA 05-1835

Amendment extended the time period for the FBI to implement certain portions of the Agreement that were still undergoing implementation. The Amendment also altered the enforcement provisions of the Agreement to simplify and streamline mediation.

In addition to entering into the Amendment, plaintiffs initiated mediation to resolve allegations that the FBI did not complete certain obligations under the Settlement Agreement which allegedly resulted in an adverse impact on black Special Agents in promotions, discipline and personnel evaluations. The parties disagreed as to whether the FBI substantially complied with its obligations under the Agreement and whether an adverse impact actually existed.

In an effort to resolve the aforementioned disagreement and to avoid expensive and protracted litigation, the parties agreed that the FBI would provide class members who had pending race-based administrative EEO or future administrative EEO claims that are based on certain promotions, discipline or performance appraisals with an opportunity to elect an alternative review of such claims. The details of this agreement are as follows.

I.   TERMS AND CONDITIONS

A.   <u>Scope of Agreement</u>

1.   Any member of the plaintiff class who has a pending administrative EEO claim alleging race-based discrimination involving non-selection for promotion from a GS-13 to a GS-14 position, final discipline (excluding terminations), or performance evaluations where the rating was "superior", may submit a claim under the procedures set forth in Section B below for appropriate relief consistent with that available under Title VII, except as modified by this Agreement. Claims that may be pursued under the procedures set forth in this Agreement are: (1) individual disparate treatment claims that are pending as of the effective date of this

2

Agreement that arose after October 14, 1993; and (2) any claims which may arise from the effective date of this Agreement through the completion of the FBI's obligations under the Settlement Agreement Amendment approved by the Court on May 17, 2000. Once the FBI completes any of the obligations set forth in §§ II.A.1, II.D.2, II.I.1, K.1 of the Settlement Agreement Amendment, specifically, development and implementation of a GS-14 selection system, study of the disciplinary system, and development and implementation of a new performance appraisal system, the procedures set forth in this Agreement may no longer be used for claims based on those areas. Class members must then pursue any relief for such claims through the FBI's Equal Employment Opportunity (EEO) administrative process.

2. With respect to those claims that may be pursued under this Agreement during the time period set forth above ("cognizable claims"), the following limitations apply: (1) promotions claims are limited to non-selections of GS-13 class members for GS-14 positions; (2) performance evaluation claims are limited to GS-13 class members assessed a superior rating; and, (3) discipline claims are limited to claims based on final disciplinary action against class members resulting from disciplinary offenses described in the Amendment, § III.C.5; no discipline claim may be brought under this Agreement where the punishment imposed was termination. If one of the above referenced claims is joined with a claim that may not be brought under this Agreement, the procedure described in this Agreement may not be utilized unless the class member elects to abandon the non-cognizable claim(s). Pending claims for which a final decision has been rendered by an EEOC Administrative Judge, Department of Justice or any court may not be pursued under the procedures set forth in this Agreement.

3.     By voluntarily electing to pursue the procedures set forth in this Agreement, the complaining class member waives any right to pursue the claim, by appeal or otherwise, before the EEOC, the Department of Justice, a court, or any other judicial, quasi judicial, or administrative body. The complaining class member also agrees to withdraw, in writing, such claims and to forward a copy of the withdrawal to the FBI's Designated Official. By voluntarily electing to pursue the procedure set forth in this Agreement, the class member waives the right to receive directly any award of back-pay or compensatory damages on his or her claim. Any back-pay or compensatory damages awarded will be contributed to a fund established pursuant to § I.C.

B.     Procedures for Bringing Claims for Relief

1.     Within forty-five (45) days from the date the Court approves this Agreement, the FBI shall notify each member of the class of his or her right to relief under this Agreement. Within thirty (30) days of receipt of notice, a claimant shall submit a written request for a decision under the procedures set forth in this Agreement, using the Request for Decision form attached as Appendix 1 hereto, for any cognizable claims pending as of the approval date of this Agreement as authorized in sections A and B of this Agreement. The written request must be post-marked within thirty (30) days of receipt of notice and sent by certified or registered mail -- return receipt requested -- to the Designated Official chosen by the FBI. Failure to designate a pending claim for decision under the procedures set forth in this Agreement within thirty (30) days from receipt of notice will bar use of these procedures for such claim.

2. With respect to those cognizable claims that arise subsequent to the approval date of the Agreement, and prior to the FBI's completion of the obligations set forth in § A.1 above, class members must follow all existing regulations governing contact with an EEO counselor, EEO counseling, and filing of an EEO complaint. See 29 C.F.R. § 1614 et. seq. Once a class member is issued a "Notice of Right to File A Discrimination Complaint" by an EEO counselor on such claims, the class member will have fifteen (15) calendar days to file a complaint with the FBI's Designated Official, using the Form DOJ-201A, as sample of which is attached at Appendix 2 hereto, to elect to pursue the procedures set forth in this Agreement. As stated above, regulations and case law governing the timeliness of EEO complaints will apply to these complaints as well. A class member must choose to file a complaint either with the FBI's Office of Equal Employment Opportunity Affairs (OEEOA) or with the FBI's Designated Official under this Agreement; a class member cannot choose both. Filing with the FBI's Designated Official is the exclusive method to elect to pursue the procedures set forth in this Agreement. The EEO counselor will not, and is not required to, provide a class member with notice of his or her right to elect to pursue the procedures set forth in this Agreement. The only notice of this right to elect to use the procedures set forth in this Agreement are contained herein and any notice of this Agreement provided to the class. All applicable defenses and burdens of proof available under Title VII and any other related laws, regulations and case law apply to claims pursued under the procedures set forth in this Agreement.

3. Once a complaint is submitted to the FBI's Designated Official, the FBI shall use its best efforts to complete an investigation of the complaint within ninety (90) days of receipt. If it is unable to do so, the FBI may extend this period for an additional sixty (60) days. If, within a

sixty (60) day period, the FBI receives more than twenty (20) such complaints, however, these time frames may be doubled. Upon completion of the investigation, the FBI will forward a Report of Investigation ("ROI") to the complaining class member and the Recommending Official designated below. The completed ROI will form the record for decision by the Recommending Official.

    4.    Within twenty-one (21) days of receipt of the Report of Investigation, the class member must submit any statement in support of his or her claim to a Designated Official selected by the FBI and a Recommending Official selected jointly by the parties. Within twenty-one (21) days of receipt of the class member's statement, the FBI must submit any statement in opposition to the class member's statement to the Recommending Official and the class member or her designated representative, if any. Any written statements submitted may not exceed fifteen (15) pages. The Recommending Official, upon request for good cause shown, may extend the page limit for the class member, the FBI or both. The ROI may be supplemented by request of the Recommending Official or at the request of either party subject to the Recommending Official's approval.

    5.    Within thirty (30) days from receipt of the FBI's statement, the Recommending Official shall notify the class member and the FBI Designated Official of the date, time and location of the hearing on the complaint before the Recommending Official. The Recommending Official shall provide such notice at least fifteen (15) days prior to the hearing date. The class member may appear at said hearing, pro se, or through a designated representative, if any. At the hearing, the class member and the FBI may present documentary evidence, argument or otherwise be heard in support of their respective positions in a manner

determined by the Recommending Official. No witnesses will be presented. The hearing may be conducted in person or by telephone, at the discretion of the Recommending Official. The presentation shall be limited to one hour for each side. The Recommending Official may extend presentation time for each side for a reasonable period, not to exceed two hours total for each side. At the conclusion of the hearing, each party shall have ten (10) days to submit written closing statements to the Recommending Official and the opposing party.

6. The class member may elect to waive the hearing and have his or her complaint decided on the written submissions filed with the Recommending Official. If the class member elects to waive the hearing, he or she must do so within fifteen (15) days of receipt of the ROI.

7. Within ninety (90) days from receipt of closing statements after a hearing, or written submissions where a hearing is waived, the Recommending Official shall submit a written Recommended Disposition to the Director of the FBI setting forth a recommended disposition for each claim, including reasonable attorney's fees to the claimant's attorney, where appropriate if the Recommended Disposition finds that the claimant is a prevailing party under the standards applicable to Title VII. If within a sixty (60) day period the Recommending Official is presented with more than twenty (20) claims, this time frame may be extended, at the Recommending Official's discretion, by an additional sixty (60) days.

8. Within ninety (90) days of receipt of the written Recommended Disposition by the Director, the Director, or his or her designee, shall render a decision accepting or rejecting the Recommended Disposition. If within a sixty (60) day period the Director is presented with more than twenty (20) Recommended Dispositions to review, this time frame may be extended at the Director's discretion by up to sixty (60) days. The Director shall accept the recommendation of

the Recommending Official unless the Recommended Disposition lacks substantial justification or is clearly erroneous. If the Director accepts the Recommended Disposition, the Director shall implement the relief in the decision in a reasonable and timely manner, except that in the event the decision involves a promotion or reassignment, the decision will be implemented as soon as an appropriate position, as determined by the Director, is available. The Director may otherwise modify the Recommended Disposition if a business justification exists. To the extent the Director or his or her designee decide not to accept in full the Recommended Disposition, the Director or his or her designee shall issue a written decision setting forth the FBI's reasons for rejecting or modifying the Recommended Disposition or any portion thereof.

9.  The Director's decision shall not be reviewable by any court or any other judicial, quasi judicial, or administrative body, nor shall it serve as the basis for any grievance, administrative complaint, or claim of discrimination or retaliation in any forum, judicial, quasi judicial, or administrative, including as part of the instant case. The Director's decision to accept or reject a Recommended Disposition shall not form the basis of an enforcement action.

10. Any written decision by the Recommending Official, or the Director or his designee, pursuant to this Agreement may not be offered, taken, construed, or introduced as evidence, or for any other purpose, either in the instant case or in any subsequent proceeding of any nature.

C.  <u>Class Fund</u>

Any monetary relief awarded to any claimant pursuant to Sections 1.B.1-10. above shall be paid within sixty (60) days of receipt by the complainant of the final decision, into an interest bearing Class Fund maintained by plaintiffs' counsel.

Plaintiffs' counsel shall bear sole responsibility for maintaining and administering the class fund. Defendant shall have no responsibility or liability for maintaining or administering the class fund in any way.

1. At the close of the procedures for bringing claims for relief set forth in this Agreement, § B, or at an earlier date if an interim distribution is approved by the Court, the Class Fund shall be distributed on a weighted, pro rata basis to:

   a. All plaintiff class members who applied for promotion from a GS-13 to a GS-14 position between January 1, 1995 and the close of the procedures for bringing claims for relief set forth in this Agreement, § B and who, as of the entry date of this Agreement, have not been promoted to a GS-14 position;

   b. All plaintiff class members who applied for promotion from a GS-13 to a GS-14 position between the entry date of this Agreement and the close of the class claimant procedures and who, as of the close of the class claimant procedures, have not been promoted to a GS-14 position;

   c. All class claimants who prevailed in any claim hereunder, involving a challenge to the claimant's performance evaluation;

   d. Any class claimants who prevailed in any claim hereunder, involving a challenge to a final disciplinary action resulting from disciplinary offenses described in the Amendment, § III.C.5.

2. Each class member entitled to a distribution from the Class Fund as set forth herein, shall be entitled to the following weighted distribution:

a. Each claimant eligible for distribution pursuant to C.1.a. above shall receive a distributive share equal to 1.0 plus .2 for each calendar year following his or her first application for GS-14 promotion that he or she did not receive a promotion, up to a maximum of a 2.0 share.

b. Each claimant eligible for distribution pursuant to C.1.b. above shall receive a distributive share equal to .5 plus .1 for each calendar year following his or her first application for GS-14 promotion that he or she did not receive a promotion, up to a maximum of a 1.0 share.

c. Each claimant eligible for distribution pursuant to C.1.c. above shall receive a distributive share equal to .1 plus .1 for each calendar year following his or her successfully challenged performance evaluation, up to a maximum of a .5 share.

d. Each claimant eligible for distribution pursuant to C.1.d. above shall receive a distributive share equal to .1 plus .1 for each calendar year following his or her successfully challenged disciplinary action up to a maximum of a .5 share.

Neither the FBI nor Plaintiffs' counsel make any representation of the tax treatment of the distribution payment or any attorneys fees that may be due.

D. <u>Attorneys' Fees and Costs</u>

1. Defendant shall pay to class counsel $230,000 in attorneys' fees and costs to fully and finally resolve all outstanding attorneys' fees and costs incurred by plaintiffs in this case since October 14, 1993, through the effective date of this Agreement except that such payment will not cover attorneys' fees or costs incurred by plaintiffs as a result of: (1) an appeal from the Court's approval of this Agreement; or (2) an intervention by an individual or organization.

Defendant reserves the right to raise any and all defenses to an application by plaintiffs, if made, for attorneys' fees or costs incurred as a result of an appeal or intervention as just described.

2. The existing monitoring fund may be used to cover fees associated with statistical analysis, and other expenses or fees, including attorneys' fees necessary to review, enforce or implement any of the provisions of the Agreement or Amendment.

3. Plaintiffs may not seek costs associated with statistical analysis once the monitoring fund is exhausted except as provided in the Settlement Agreement Amendment, § V.F.

4. Plaintiffs' may petition the Court for attorneys' fees and costs described in ¶ D.2 above incurred after the effective date of this Agreement if the monitoring fund is exhausted. Defendant reserves the right to raise any and all defenses to an application for attorneys' fees or costs incurred in connection with ¶ E.2 above. To the extent this Agreement, § D conflicts with §§ V.F and VI.I of the Settlement Agreement Amendment, this Agreement, § D supercedes those sections and is binding on the parties.

E. <u>Effective Date</u>

This Agreement shall take effect upon final approval by the Court following any fairness hearing that the Court, in its discretion, may hold.

F. <u>Enforcement</u>

The terms of this Agreement may be enforced in the same manner as provided for in the Settlement Agreement Amendment, § V.F.

G.  Construction

The parties enter into this Agreement voluntarily and it does not constitute an admission of the merits of any position taken by any party to this litigation, nor of any liability by the defendant for the violation of any law, statute, regulation, or policy. Furthermore, the FBI's agreement to provide the procedures outlined herein for resolution of disparate treatment claims does not, and shall not be construed by plaintiffs or the Court, as an acknowledgment, admission or other suggestion that the claims in this action were, in who or in part, disparate treatment claims or that the Settlement Agreement in any way involved disparate treatment claims. It is and consistently has been, the FBI's position that the plaintiffs' claims in this action were, and are, limited to disparate impact claims in connection with FBI policies and practices that plaintiffs challenged in this action.

H.  Collateral Use of the Agreement Prohibited

The parties to this action have entered into this Agreement as a compromise measure to terminate this action and resolve all issues which were the subject of mediation except attorneys' fees. The terms of this Agreement, the negotiations leading up to this agreement, the data, documents, or information exchanged between the parties in the course of those negotiations, may not be offered, taken, construed, or introduced as evidence of liability or as an admission or statement of wrongdoing by the FBI, either in this action or in any subsequent proceeding of any nature.

I.  Counterparts

This Agreement may be executed in one or more counterparts and each executed copy shall be deemed an original which shall be binding upon all parties hereto.

J.  <u>Entire Agreement</u>

This Agreement, including all appendices attached hereto, constitutes the entire agreement between and among the parties with respect to the subject matter hereof and supersedes all prior agreements, written or oral, with respect thereto.

K.  <u>Releases</u>

1. The defendant and his or her successors, and the United States of America and any department, agency or establishment thereof and any officers, employees, agents, successors or assigns of such department, agency or establishment ("releasees") are released from any additional liability based on any and all claims and causes of action which have been, could have been or will be asserted in this case by reason of, or with respect to, any of the matters alleged in the mediation giving rise to this Agreement, which the class members or the plaintiff class, or any of them, or their heirs, executors, successors or assigns had, now have, or may subsequently have against the releasees. This release also applies to all attorneys' fees and costs incurred by plaintiffs from October 14, 1993 through the effective date of this Agreement.

2. The terms set forth in this Agreement are in full and final satisfaction of any and all claims and demands, of whatever nature, that the plaintiffs, or plaintiff class, or any of them, or their heirs, executors, successors or assigns had or may hereafter acquire against the defendant, and any of his agencies, servants, employees or instrumentalities on account of and with respect to the incidents, claims or circumstances giving rise to and/or alleged in the above-captioned action, including any and all attorneys' fees incurred from October 14, 1993 through the effective date of this Agreement. Upon the Court's approval and the entry of this Agreement, the claims

raised, or that could have been raised, in the mediation giving rise to this Agreement, shall be deemed dismissed, with prejudice.

L.   <u>Extension of Time by Agreement of the Parties</u>

All time deadlines established in this agreement may be extended by written agreement of the parties to this Agreement.

*[signature: Ron Schmidt]*

DAVID J. SHAFFER
RON SCHMIDT
Thelen Reid & Priest LLP
701 Pennsylvania Ave., N.W.
Suite 800
Washington, D.C. 20004
(202) 508-4058

JEFFREY L. TAREN
Kinoy, Taren, Geraghty & Potter
332 S. Michigan Ave., Suite 1705
Chicago, IL 60604
(312) 663-5211

Attorneys for Plaintiffs

DAVID W. OGDEN
Assistant Attorney General

WILMA A. LEWIS
United States Attorney

*[signature: Andrea Sharrin]*

LOIS B. OSLER
ANDREA M. SHARRIN
U.S. Department of Justice
Civil Division
901 E Street, N.W., Room 936.
Washington, D.C. 20004
(202) 616-8268

Attorneys for Defendant

SO ORDERED:

DATED: *April 30, 2001*

*[signature: Thomas F. Hogan]*
UNITED STATES DISTRICT COURT JUDGE

15