UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DONOVAN J. LEIGHTON,                    )
                                        )
          Plaintiff,                    )
                                        )
                                        ) Civil Action No. 05-1835 HHK
     v.                                 )
                                        )
ALBERTO GONZALES,                       )
U.S. Attorney General,                  )
                                        )
          Defendant.                    )
_____)

## DECLARATION OF JOYCE CARSON

1.  I am Joyce Carson, an employee in the United States Department of Justice.  My responsibilities include mailing such documents as final decisions issued from the Complaint Adjudication Office.

2.  The statements I make in this declaration are based on my review of the official files and records of the United States Department of Justice's Complaint Adjudication Office, my own personal knowledge, and on the basis of knowledge acquired by me through the performance of my official duties.

3.  Due to the nature of my official duties, I am familiar with the procedures followed by this office in mailing final decisions issued from the Complaint Adjudication Office.

4.  Upon learning that Mr. Donovan Leighton had initiated the above-captioned civil action, I searched the files maintained in the ordinary course of business in the Complaint Adjudication Office.  Those records are maintained by persons whose duty it is accurately and timely to maintain those records.



EXHIBIT
S
CA 05-1835

5. My search of those records revealed that notice of the Department of Justice Final Decision in the matter of <u>Donovan Leighton v. Federal Bureau of Investigation</u>, Agency Complaint No. F-03-5733, was mailed to Mr. Leighton at his address of record on June 7, 2005.

6. A true and accurate copy of the Department of Justice Final Decision with the accompanying cover letter dated June 7, 2005, is attached to this declaration.

7. The records of the Complaint Adjudication Office also reflect that the June 7, 2005 Department of Justice Final Decision and the accompanying cover in the matter of <u>Donovan Leighton v. Federal Bureau of Investigation</u>, Agency Complaint No. F-03-5733, were not returned to the office as undeliverable or for any other reason.

I declare under penalty of perjury that the foregoing is true to the best of my information and belief.

<u>12/15/05</u>
dated

Joyce R. Carson
Joyce P. Carson

-2-



**U.S. Department of Justice**

Complaint Adjudication Office

Agency Complaint No. F-03-5733
DJ Number 187-2-813

---

*Complaint Adjudication Office*
*Patrick Henry Building, Ste. 5300*
*950 Pennsylvania Avenue, N.W.*    JUN  7 2005
*Washington, DC 20530*

Mr. Donovan Leighton
801 15th Street South, #1511
Arlington, VA 22202

Dear Mr. Leighton:

    This is in reference to the complaint of discrimination that
you filed against the Federal Bureau of Investigation.  Under the
Department of Justice's equal employment opportunity regulations,
the Complaint Adjudication Officer renders the final Department
of Justice decision on your complaint.  The Department of Justice
finds that you were not subjected to discrimination based on
either race or reprisal.  Enclosed is the final Department of
Justice decision.

Rights of Appeal

    First, you have the right to appeal any part of this
decision to the Equal Employment Opportunity Commission (EEOC).
You may do so by filing your appeal within 30 days of the date
you receive this decision.  If you are represented by an attorney
of record, the 30-day appeal period shall begin to run the day
your attorney receives this decision.  The appeal must be in
writing.  The Commission prefers that you use EEOC Form 573,
Notice of Appeal/Petition, a copy of which is attached, to appeal
this decision.  The notice of appeal should be sent to the
Director, Office of Federal Operations, EEOC, Post Office Box
19848, Washington, D.C.  20036, by mail, personal delivery, or
facsimile.  You must also send a copy of your notice of appeal to
Veronica Venture, EEO Officer, Federal Bureau of Investigation,
10th and Pennsylvania Avenue, N.W., Room 7901, Washington, D.C.
20535.  You must state the date and method by which you sent the
copy of your notice to the agency's EEO Director either on, or
attached to, the notice of appeal you mail to the EEOC.

    Second, you have the right to file a civil action in the
appropriate United States District Court within 90 days of the
date you receive this decision.  In filing your federal
complaint, you should name Attorney General Alberto Gonzales as
the defendant. . Even if you appeal this decision to the EEOC, you
still have the right to go to federal court.  You may file a

- 2 -

civil action in the United States District Court within 90 days
of the day you receive the Commission's final decision on your
appeal, or after 180 days from the date you filed your appeal
with the Commission, if the Commission has not made a final
decision by that time.

    If you cannot afford to file a civil action, you can ask the
court to allow you to file the action at no cost to you.  The
court may also provide you with an attorney if you cannot afford
to hire one to represent you in your civil action.  Questions
concerning when and how to file a waiver of costs should be
directed to your attorney or the District Court clerk.

                                    Sincerely,

                                    Mark L. Gross
                            Complaint Adjudication Officer


cc:   Veronica Venture
      Theodius McBurrows

# NOTICE OF APPEAL/PETITION
## TO THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### Office of Federal Operations

1. Appellant's name (Last, First, Middle) [Please Print or Type]

2. Home/mailing address:                                    Social Security No. ___-__-____

3. Name and address of attorney or other representative, if any:

4. Appellant's daytime telephone number (incl. area code):    | 5. Representative's telephone number (if applicable)

6. Has the appellant filed a formal complaint with his/her agency?

_____ No        _____ Yes, indicate the Agency's complaint number: _____

7. Name of the agency being charged with discrimination:

8. Location of the duty station or local facility in which the complaint arose.

9. Has a FINAL DECISION been issued by the agency, an Arbitrator, FLRA, or MSPB on this complaint?

____Yes (Indicate the date the appellant RECEIVED it _____, and ATTACH A COPY.)

____No

____This appeal alleges a breach of a settlement agreement.

10. Has a complaint been filed on this same matter with this Commission, another agency, or through any other administrative or collective bargaining procedure?

____No   ____Yes (Indicate the agency or procedure, complaint/docket number, and attach a copy, if appropriate)

11. Has a civil action (lawsuit) been filed in connection with this complaint?

____No   ____Yes (ATTACH A COPY OF THE CIVIL ACTION FILED)

12. Signature of appellant or appellant's representative.    | 13. Date

NOTICE: Before mailing this appeal, be sure to attach a copy of the final decision from which you are appealing, if one has been issued. Any comments or brief in support of the appeal MUST be filed within the time specified by the agency, within 30 days of the date this appeal is filed. Making a knowingly false statement on this form is punishable by law. See 18 U.S.C. 1001.

PRIVACY ACT STATEMENT ON REVERSE SIDE.

FOR EEOC USE ONLY    OFO DOCKET NUMBER

EEOC FORM 573 REV. 4-92

U.S. Department of Justice

Complaint Adjudication Office



Agency Complaint No. F-03-5733
DJ Number 187-2-813

Complaint Adjudication Office
Patrick Henry Building, Ste. 5300
950 Pennsylvania Avenue, N.W.
Washington, DC 20530

JUN   7 2005

## DEPARTMENT OF JUSTICE FINAL DECISION

### in the matter of

#### Donovan Leighton v. Federal Bureau of Investigation

On November 25, 2002, complainant Donovan Leighton filed an employment discrimination complaint against the Federal Bureau of Investigation (FBI) pursuant to Section 717 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16, and 29 C.F.R. §§1614.101(a)&(b).   The issues accepted by the FBI's Office of Equal Employment Opportunity Affairs were whether complainant was discriminated against based on race (black) and reprisal when (Ex. 6):

1) on or about September 10, 2002, he learned that he was not selected to attend the 45th Session of the Senior Seminar, Foreign Service Institute, Department of State;

2) on or about December 18, 2002, he did not receive an incentive award;

3) on or about December 17, 2002, he was not selected for the position of Legal Attache in Manila;

4) on or about March 28, 2003, he was denied the opportunity to participate in a top priority investigation of an Al Qaeda target; and

5) on or about April 1, 2003, he was the subject of a direct management referral to the Employee Assistance Program for anger management.  He believed the referral was in retaliation for an e-mail he sent protesting racially disparate treatment in the Office of International Operations.

After the completion of an EEO investigation, complainant received a copy of the Report of Investigation and was informed of his right to either an administrative hearing or a final

-2-

agency decision without a hearing.  Complainant requested a final
agency decision and, on January 18, 2005, the FBI forwarded
complainant's case file to the Complaint Adjudication Office for
a final Department of Justice decision.

## Facts

At the time of his complaint, complainant was a Supervisory
Special Agent (SSA) with the FBI's Office of International
Operations (OIO).  Complainant joined the FBI in 1978.  He
claimed that he was subjected to a continuing pattern of
discrimination and retaliation beginning early in his FBI career
(Ex. 9, p. 2).  Complainant said he filed an EEO complaint in the
early 1990s and was a leader and named plaintiff in the Black
Agents Don't Get Equality (BADGE) class action lawsuit in 1993
(id. at 3).  He said he believed that his background was known to
the senior FBI executives involved in the relevant personnel
actions (id. at 4).  Complainant stated that his allegations had
to be considered "against the backdrop of my prior involvement in
EEO protected activities, particularly as they related to former
Director [Louis] Freeh and his close associates" (id. at 5).

I.  ## Department of State Senior Seminar

Complainant claimed that he was discriminated against based
on race and reprisal when he was not selected to attend the
Department of State Senior Seminar which commenced in August
2002.  Complainant said he was told that he was not selected for
the course because the Special Agent Mid-Level Management
Selection (SAMMS) Board determined that the seminar was intended
to be an introductory course for managers with no previous Legal
Attache (Legat) experience and complainant already had extensive
international experience (Ex. 2A).  Complainant pointed out that
the Senior Seminar had been attended by other former Legats and
that attendees needed "considerable international experience in
order to make meaningful contributions to the program" (Ex. 9, p.
122).  Complainant said that he was told that the OIO Legat
Screening Panel (LSP) had identified him as the top-ranked
candidate to attend the seminar, but the SAMMS Board selected
another candidate (ibid.).  Complainant said he was also informed
that he was not selected because he had received an "effective
but inefficient" rating on an inspection review when he served at
Legat-Bridgetown in Barbados (ibid.).  Complainant claimed that
the Legat-Bridgetown inspection should have been discredited
because the Inspector failed to "gather and report facts
accurately and objectively within the context of [the]
inspection" (id. at 93).

-3-

Former Deputy Assistant Director Francis Gallagher (white) was a member of the SAMMS Board that considered the candidates for the Senior Seminar in May 2002. Gallagher said that the Board recommended Blake Hamilton (white), who was an Assistant Special Agent in Charge (ASAC) and possessed more managerial experience than complainant, who had not served as an ASAC (Ex. 11, p. 2). Former Special Agent in Charge (SAC) William Gore (white) also served on the SAMMS Board for the Senior Seminar selection. Gore stated that he believed the position was one which was designed to prepare someone for a foreign assignment, noting that complainant had already served in such capacity (Ex. 12, p. 2). Another member of the SAMMS Board, former DAD Thomas Locke (white), said that he was aware of the unfavorable inspection complainant was responsible for while serving at Legat-Bridgetown (Ex. 13, p. 2). Locke concurred that the Senior Seminar was designed to prepare someone for a foreign assignment (ibid.). SAC Chris Swecker (white) also served on the SAMMS Board and said his decision was based on the fact that selectee Blake Hamilton had served as an ASAC while complainant had not (Ex. 15, p. 2).

The SAMMS Board sent its recommendation to the FBI Director in May 2002 (Ex. 31). The Board indicated that each candidate's background was evaluated based upon the following qualifications: 1) extensive investigative and managerial experience; 2) exceptional written/oral, interpersonal and liaison skills; and 3) strong leadership skills (id. at 2). The Chairperson of the SAMMS Board, Assistant Director Sheri Farrar (white), indicated that the LSP ranked complainant as the top candidate ahead of Hamilton (id. at 3). Farrar noted that the SAMMS Board did not agree with the LSP's rankings because Hamilton had more management experience and because of the unfavorable inspection review complainant received at Legat-Bridgetown (id. at 5).

## II. Selection of the Legal Attache in Manila

Complainant alleged that he was subjected to further discrimination when he was not selected for the Legat-Manila position on or about August 2002. He said that he was not selected for the position even though he was informed that he was the top-ranked candidate for the position by the OIO LSP (Ex. 9, p. 128). Complainant said he later found out that OIO SAC Roderick Beverly (white) had not supported him for the position (ibid.). According to complainant, Beverly failed to support him because Beverly had been listening to former Executive Assistant Director (EAD) Kathleen McChesney, who complainant claimed had opposed the promotion of an African American candidate to a Section Chief position in the Training Division (ibid.).

-4-

The record indicates that complainant was the top-ranked candidate for the position by the OIO LSP (Ex. 37). SAC Beverly submitted an addendum to the SAMMS Board, noting that there was an inconsistency in the information that had been provided to the SAMMS Board regarding complainant's former posting at Legat-Bridgetown (Ex. 38). Beverly took issue with the LSP's comment that complainant had been extremely effective at Legat-Bridgetown during the period 1998-2001 (ibid.). Beverly informed the SAMMS Board that, during the 2000 Legat-Bridgetown inspection, complainant was found "effective but inefficient" in his performance (ibid.). Beverly also told the Board that the Legat-Manila posting is a critical one for the FBI, and that complainant might be more suited to an embassy with a less demanding workload (ibid.). Thus, Beverly urged the SAMMS Board not to consider complainant for the posting (ibid.). The Legat-Manila SAMMS Board members indicated that Beverly's comments played a role in their decision not to select complainant (Exs. 16-21).

Beverly said he submitted the addendum to the SAMMS Board for clarification regarding complainant's past performance at Legat-Bridgetown (Ex. 23, p. 2). Beverly said he met with complainant after the Legat-Manila selection and told him that he was not recommended for a number of reasons, including the 2000 Legat-Bridgetown inspection, along with stress and health concerns (ibid.). He noted that complainant took exception with the inspection results.

III. Failure to receive incentive award

Complainant claimed that, in November 2002, SSA Cary Gleicher asked him for a summary of his accomplishments so he could recommend complainant for an incentive award (Ex. 2B). Complainant said he provided the summary but found out in December 2002 that his award was never processed (ibid.). Complainant said he thought that SAC Beverly failed to approve his incentive award recommendation because of the negative information Beverly had provided to the SAMMS Board when complainant applied for the Legat-Manila position (ibid.). Complainant said he believed that OIO management officials did not submit his recommendation for an award because "they were afraid it might be probative in any EEO litigation relating to my non-selection for Legat Manila" (Ex. 9, p. 129).

Former OIO Section Chief Michael Pyszczymuka (white) stated that he signed off on all recommendations for incentive awards, including complainant's (Ex. 25, p. 2). Pyszczymuka explained

-5-

that, even though all of the recommendations for awards were
accepted, OIO determined that there was a budget shortfall of
nearly $12,000 (ibid.).  He said he discussed the matter with SAC
Beverly and decided that the awards should be given to the Legats
and Assistant Legal Attaches (ALATs) first, and that those who
did not receive an award would be considered the next fiscal year
(ibid.).  Pyszczymuka emphasized that complainant was not the
only individual who failed to receive an incentive award (ibid.).

IV.  Denial of opportunity to participate in investigation

    Complainant claimed that, on March 28, 2003, OIO management
officials denied him the opportunity to participate in a top
priority investigation of a key Al Qaeda terror suspect with a
connection to Trinidad, an area covered by Legat-Bridgetown.
Complainant said he volunteered to assist in the investigation
since he already had insight into Islamic terrorist groups in
Trinidad, but his then supervisor, SSA Sandra Fowler (white),
told him that he could not be spared (Ex. 9, p. 132).  He added
that Pyszczymuka told him that local officials in Trinidad wanted
only two SAs to assist them in the investigation (ibid.).
Complainant stated that, based on his experience in Trinidad, he
believed that Pyszczymuka's statement was a lie (id. at 133).
Complainant alleged that OIO management officials prevented him
from participating in the investigation "because they anticipated
that I would perform at a high level and this would be probative
on the issue of my non-selection for Legat Manila" (id. at 134).

    SAC Beverly said that the Counterterrorism Division (CTD)
has a "Fly Squad" that is available to respond to such an
investigation and that the CTD sent two SAs from the Fly Squad to
Trinidad (Ex. 23, p. 3).  He said complainant expressed an
interest in assisting the investigation but it was determined
that it was not necessary for complainant, or anyone else in his
unit, to participate (ibid.).   Beverly said that complainant
responded by criticizing OIO management and OIO operations in an
e-mail dated March 30, 2003 (ibid.).

    SSA Fowler noted that, at the time of the investigation,
complainant was the only SA in the International Operations Unit
II (IOU II) and there was a staff shortage because of the Iraq
War (Ex. 24, p. 5).  Fowler said she explained to complainant
that she could not deploy him to Trinidad because it would have
adversely affected operations in IOU II (ibid.).  She said
complainant continued to argue that he should be deployed to
Trinidad even after the CTD decided to send SAs from the Fly
Squad (id. at 6).  Fowler noted that complainant then went
outside his chain of command and sent an e-mail to the CTD

-6-

Assistant Director explaining why he should go to Trinidad
(ibid.).

In an e-mail response to complainant dated March 30, 2003,
Pyszczymuka informed complainant that the CTD had identified two
SAs familiar with the case and nobody else was needed (Ex. 25).
Pyszczymuka continued, "Since OIO is fully stretched covering
SIOC and other matters, I request that you stand down on this
request and remain in the Unit to assist [SSA Fowler]" (ibid.).

V.    Referral to EAP

Complainant also claimed that Pyszczymuka and Fowler
subjected him to retaliation when they referred him to the
Employee Assistance Program (EAP) for anger management on April
1, 2003.  Complainant stated that he was summoned to a meeting
with EAD Charles Prouty, SAC Beverly and Pyszczymuka on April 1,
2003, after he sent a "strongly worded" e-mail addressing OIO's
subpar performance in the war against terrorism, employment
discrimination by OIO management, and underutilization of OIO
resources (Ex. 9, p. 135).  Complainant said the e-mail contained
the following comment regarding OIO's failure to deploy him to
Trinidad (ibid.):

While I'm told that OIO is fully stretched covering
SIOC and other matters, I wonder if we're making full
use of our personnel when I see two surplus GS-15s
routinely lounging around OIO's front office apparently
lying in wait for an SES butt to kiss.

Complainant said he was referring to SSAs Fowler and Walter Smith
when he mentioned "two surplus GS-15s" (ibid.).

Complainant said that Pyszczymuka called the e-mail
"unprofessional" and that it bordered on a performance issue (id.
at p. 138).  He said Pyszczymuka also told him that the comments
in the e-mail demonstrated a lack of trust in OIO and "an
apparent deep rooted anger for the Section" (ibid.).  He added
that Pyszczymuka said he was referring him to the EAP "to review
possible issues of anger" (id. at 139).  Complainant said he
presented Pyszczymuka with a letter from Dr. Janice Berry
Edwards, a therapist in the FBI's EAP, which indicated that
complainant's mental health and judgment were sound (ibid.).
According to complainant, the EAP referral "was clearly intended
to prevent communication of information to EAD Prouty which
reflected adversely on OIO management" (id. at 143).

SSA Fowler stated that she believed complainant did not have

-7-

very good interpersonal skills, adding that he responds to her requests for information "very forcefully and aggressively" (Ex. 24, p. 3). She said complainant "seems to react differently from others, often becoming angry about things which I would characterize as inconsequential" (id. at 4). Fowler further stated that, after complainant sent his inappropriate e-mail, SAC Beverly was "very, very distressed" and suggested that the e-mail be referred to the Office of Professional Responsibility or the EAP (id. at 7). Fowler said she had concerns regarding complainant's physical appearance (red face, bloodshot glassy eyes) and aggressive behavior, and that she believed all of these might be "signs of an alcohol or stress-related behavior pattern" (id. at 8). She said she suggested to Beverly and Pyszczymuka that a referral to EAP might be appropriate (id. at 8). Fowler said that she and Pyszczymuka met with an EAP counselor and psychologist prior to meeting with complainant, and that both the psychologist and counselor recommended a management referral to the EAP based on complainant's e-mail (id. at 9). Fowler said that complainant reacted angrily to the referral and his attitude and aggressive actions in the following weeks created a hostile work environment for his fellow co-workers (id. at 11).

## Decision

Complainant charged that he was subjected to a pattern of race discrimination and retaliation by FBI management officials. Section 717 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16, and 29 C.F.R. §§1614.101(a)&(b), prohibit discrimination on the bases of race and reprisal. In order to find intentional discrimination or retaliation under Title VII, the preponderance of the evidence in the record must show that management's stated non-discriminatory reason(s) for its actions are not credible, and that management was actually motivated by the employee's protected traits -- in this instance, his race or prior EEO activity. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 515-517 (1993). Based on a thorough review of the record, there is no basis for a finding that FBI management officials discriminated against complainant because of his race, or retaliated against him for engaging in EEO activity.

Even assuming the record establishes a prima facie case of discrimination, management officials articulated legitimate, non-discriminatory reasons for the complained of actions and there is no evidence to support a finding that these reasons are unworthy of credence and are a pretext masking discrimination based on race or reprisal. See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143 (2000). SAMMS Board members indicated

-8-

that they did not select complainant for the DOS Senior Seminar
in May 2002, because the selectee had more management experience
and because complainant had received an unfavorable inspection
review while serving at Legat-Bridgetown (Exs. 11-15).
Similarly, SAMMS Board members explained that they did not select
complainant for the Legat-Manila position, in part, because of
SAC Beverly's comments regarding the unfavorable Legat-
Bridgewater inspection review (Exs. 16-21).  Michael Pyszczymuka
stated that complainant and others did not receive incentive
awards in December 2002 because of a budget issue (Ex. 25, p. 2).
Pyszczymuka and SSA Fowler both stated that complainant was not
selected to go to Trinidad to assist in the investigation of a
suspected terrorist because there was a manpower shortage in
complainant's unit and the CTD was already sending two SAs from
the Fly Squad (Ex. 24, p. 5; Ex. 25).  Finally, Fowler explained
that complainant was referred to the EAP primarily because of
negative comments he made about the OIO in his March 30, 2003 e-
mail (Ex. 24, p. 4).

    Because FBI management officials provided non-discriminatory
reasons for the incidents complainant cited in his complaint, for
complainant to prevail on his claim the record must demonstrate
that management's stated reasons were a pretext for
discrimination based on either race or reprisal.  See Rose-Maston
v. NME Hospitals, Inc., 133 F.3d 1104, 1108 (8th Cir. 1998).  In
determining whether pretext exists, the issue is whether FBI
officials honestly believed in the reasons they offered to
justify their actions.  McCoy v. WGN Continental Broadcasting
Co., 957 F.2d 368, 373 (7th Cir. 1992).  First, the record does
not establish that complainant was subjected to race
discrimination or reprisal with regard to the selection for the
DOS Senior Seminar.  The review of the audiotape of the SAMMS
Board deliberations for the DOS Senior Seminar indicates that the
Board members unanimously voted to recommend Blake Hamilton over
complainant because Hamilton was an ASAC and had more managerial
experience than complainant, and because complainant had already
served as a Legat and the Board members believed the seminar was
designed to prepare someone without much foreign experience for a
foreign assignment (Ex. 32).  Complainant cannot simply assert
that the decision of the SAMMS Board was wrong, but the record
must contain evidence that the members were motivated by
discriminatory or retaliatory animus when they made their
decision.  Fuentes v. Perskie, 32 F.3d 759, 765 (3rd Cir. 1994).
The record contains no evidence that the Board members harbored
such discriminatory animus.  Significantly, the SAMMS Board was
made up of management officials from across the country - not all
of whom were familiar with complainant - and a majority of the
members stated that they were not even aware complainant had been

-9-

a plaintiff in the BADGE lawsuit. While complainant claimed that
a certain expertise in foreign affairs was necessary to
contribute to the seminar, it is clear that the SAMMS Board
members who were tasked with picking a candidate had a different
view of the seminar's purpose.

Similarly, there is no evidence that complainant was
subjected to race discrimination or retaliation when he was not
selected for the Legat-Manila position in August 2002. The
record indicates that the SAMMS Board relied on information
regarding the 2000 Legat-Bridgewater inspection which rated
complainant as "effective but inefficient." SAC Beverly credibly
explained that he had to inform the SAMMS Board members that
complainant had not been "extremely effective" at Legat-
Bridgetown to clear up what he felt was an inconsistency in the
LSP's ranking and written discussion of the candidates (Ex. 23,
p. 2). He further informed the Board that Legat-Manila was a
critical post for which complainant was not well-suited. The
SAMMS Board members understandably considered this negative
information in their decision not to recommend complainant.
While complainant clearly did not agree with the results of the
2000 Legat-Bridgewater inspection, this alone does not establish
that either Beverly or the SAMMS Board members were motivated by
racial or retaliatory animus during the Legat-Manila selection.

The record also fails to establish that complainant was
subjected to race discrimination or retaliation with regard to
his additional claims. Pyszczymuka explained that complainant,
along with other OIO SAs, did not receive incentive awards in
December 2002 because there was a budget shortfall and
Pyszczymuka and SAC Beverly decided that awards should go to the
Legats and ALATs first (Ex. 25, p. 2). Complainant contended
that he did not receive an award because OIO management officials
were afraid that an award would help complainant's EEO claim with
regard to the Legat-Manila selection. Complainant's
unsubstantiated theory, without specific evidence that
Pyszczymuka considered complainant's race or prior EEO activity,
is insufficient to refute Pyszczymuka's legitimate reason.
Complainant failed to provide any evidence that his race or prior
EEO activity was a factor in the award decisions other than his
general allegations that he was a plaintiff in the BADGE lawsuit
nearly seven years before. Importantly, Pyszczymuka provided
unrefuted testimony that complainant was not the only individual
in the OIO who failed to receive an incentive award in December
2002. Thus, there is no basis for finding discrimination or
reprisal with regard to complainant's failure to receive an
incentive award.

-10-

Moreover, the record does not establish that complainant was
discriminated against based on race or reprisal when he was
denied the opportunity to participate in an investigation, and
subsequently referred to the EAP in March-April 2002. It is
clear that complainant believed he was well-qualified to travel
to Trinidad and assist in the investigation of the Al Qaeda
suspect. However, even if complainant was uniquely qualified for
the assignment as he claimed, the record supports OIO management
officials' explanation that complainant was not needed because
the CTD had already assigned two SAs and complainant's
participation would have left his unit short-handed. While
complainant may have disagreed with management's decision, there
is no evidence that the decision was based on racial or
retaliatory bias. Complainant's assertion that Pyszczymuka lied
when he told complainant that officials in Trinidad only
requested two SAs to assist in the investigation is insufficient
to establish pretext.

Finally, even if management's decision to refer complainant
to the EAP constitutes an adverse employment action, the record
does not establish that management's motives were discriminatory.
The record demonstrates that complainant's March 30, 2003 e-mail,
in which he harshly criticized OIO management, prompted the EAP
referral. SSA Fowler noted that an EAP counselor and
psychologist both reviewed the e-mail and agreed that an EAP
referral was warranted. Fowler also pointed out that
complainant's physical appearance and aggressive behavior
suggested that complainant might be experiencing problems with
stress and alcohol (Ex. 24, p. 8). Complainant provided no
evidence that the referral was made for discriminatory reasons
other than his wholly conclusory opinion that the referral was
intended to prevent EAD Prouty from discovering negative
information about OIO management officials. Complainant's
subjective opinions that the referral was made because of his
race or prior EEO activity, without further evidence that
management was motivated by racial or retaliatory animus, are
insufficient to sustain a finding of race discrimination or
retaliation. See Huckaby v. Moore, 137 F.3d 871, 878 (5th Cir.
1998); Brody v. Brown, 199 F.3d 446, 458-59 (D.C. Cir. 1999).

It should be noted that a strong theme running throughout
all of complainant's claims is that the 2000 Legat-Bridgetown
inspection findings were wrong and should have been discredited.
Such a claim does not address whether the responsible management
officials in this case honestly believed in the decisions they
made regarding complainant based in part on the negative
assessment of his performance at Legat-Bridgetwon. Lenoir v.
Roll Coater, Inc., 13 F.3d 1130, 1134 (7th Cir. 1994). While

-11-

complainant criticized the inspection findings, the management
officials involved in the personnel actions in this case were
aware that complainant had been rated "effective but inefficient"
by the Inspector.  Clearly, this finding negatively impacted some
of the decisions complainant believes were discriminatory or
retaliatory.  However, while complainant may have believed that
he deserved a better rating on the 2000 inspection, the
preponderance of the evidence in the record demonstrates that OIO
management officials honestly believed that there were issues
with complainant's performance and attitude.  It is these
management officials' perception of complainant's performance and
conduct that is relevant, not his subjective evaluations of
himself.  Shorter v. ICG Holdings, Inc., 188 F.3d 1204 (10th Cir.
1999).  Complainant cannot simply assert that the responsible
management officials' decisions were wrong, but must provide
evidence that those decisions were motivated by discriminatory or
retaliatory animus.  Fuentes v. Perskie, 32 F.3d at 759.  The
record contains no such evidence in this case.


<u>Decision</u>

     For the foregoing reasons, the preponderance of the evidence
in the record fails to establish that complainant was
discriminated against because of his race, or retaliated against
for engaging in prior EEO activity.


_____
          Mark L. Gross
    Complaint Adjudication Officer


_____
          David B. Berry
             Attorney
    Complaint Adjudication Office