UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMES L. THOMPSON, JR., ) | |
| ) | |
| Plaintiff ) | |
| ) | Civil Action No. 01-2105 (JDB) |
| v. ) | |
| ) | |
| CHRISTINE TODD WHITMAN, ) | |
| Administrator, Environmental ) | |
| Protection Agency, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff James L. Thompson, Jr., brings this employment discrimination action under Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e et seq., against Christine Todd Whitman in her capacity as Administrator of the Environmental Protection Agency ("EPA"). Thompson, an Assistant Special Agent in Charge ("Assistant SAC") in EPA's Philadelphia Office of Criminal Enforcement, Forensics, and Training ("OCEFT"), raises two claims: that EPA denied him a promotion for the position of Special Agent in Charge ("SAC") in Philadelphia because he is African-American, and that EPA engaged in a "pattern and practice" of discrimination by giving preferential treatment in promotions to non-African-Americans. Complaint ¶ 1; see also id. ¶¶ 23, 24. Thompson claims that white agents were promoted in place – did not have to relocate to another city – but African-Americans were not. Complaint ¶¶ 23-24, 31.

EPA moves to dismiss Thompson's complaint for failure to exhaust administrative



remedies. EPA contends that Thompson did not contact an EEO counselor within 45 days of the alleged discrimination, as required by EEOC regulations. Def. Motion to Dismiss at p. 6; see 29 C.F.R. §1614.105(a)(1). The motion raises issues implicating the Supreme Court's recent decision on the "continuing violation" doctrine in National R.R. Passenger Corp. v. Morgan, 122 S. Ct. 2061 (2002). For the reasons stated below, EPA's motion to dismiss is granted.

I.  **Factual Background**

Thompson has worked for EPA since 1989, when he was hired as a Criminal Investigator in the Dallas office. Complaint at ¶ 5. In 1995, Thompson – at the time an Assistant SAC – applied for three vacant SAC positions in Philadelphia, Dallas, and Washington. Id. at ¶ 9. He alleges that he was told that due to an agency policy against promoting agents "in place" (in other words, without relocating) he would not be considered for the Dallas position. Id. Thompson was later selected for the Assistant SAC position in Philadelphia, where he currently works. Id.

In December 1998, the SAC position in Philadelphia became available; Thompson and a white female Assistant SAC in the Philadelphia office, Lori Hanson, applied for the position. Pl.'s Opposition (Thompson Aff. ¶ 9). A panel conducted separate interviews lasting about three hours. Id. In January 1999, Thompson learned that Hanson had been selected for the position. Id. at ¶ 10. Then, in March 1999, the EPA promoted in place two other Assistant SACs, a Hispanic male from Los Angeles and a white female from San Francisco. Id. at ¶ 12; see also Pl. Opposition, Ex. 4 at p. 5. On or about August 1, 1999, Kim Turnpaugh, a white Assistant SAC in Atlanta, was promoted to the SAC position in that office without having to relocate. Pl.'s Opposition (Thompson Aff. ¶¶ 16, 18). Thompson did not apply for the SAC positions in Los Angeles, San Francisco, or Atlanta.

2

On August 11, 1999, after learning of Turnpaugh's promotion, Thompson contacted a counselor in the EPA's Equal Employment Opportunity Office, complaining that a white female was selected in place for a SAC position, whereas Thompson was told years earlier that in order to be promoted, he would have to relocate. Def.'s Motion, Ex. 1 (La Fone Dec. at ¶ 5); Complaint at ¶ 9. When the initial counseling proved unsuccessful in resolving his concerns about discrimination, Thompson submitted a formal, written complaint on October 7, 1999. See Pl.'s Opposition (Thompson Aff. at p.1). On April 18, 2001, the Agency dismissed Thompson's claims, and provided him a copy of the EPA investigation report, which notified him of his right to request an appeal hearing before an EEOC administrative judge. Id. at 2-3. When Thompson did not do so, EPA issued a Final Agency Decision dismissing his complaint in accordance with 29 C.F.R. §1614.107(b) for failing to timely contact an EEO counselor within the statutorily mandated 45 days of the alleged discrimination. Id.

On October 9, 2001, plaintiff filed this action, asserting as follows:

> Plaintiff's claim, is that he was discriminated against because of his race, African American, when he was not selected for the position of GS-15 Special Agent in Charge in the Philadelphia, Pennsylvania Office of the Agency and that the non-African American employees have been given preferential treatment regarding promotions to special agent in Charge positions in the Agency.

Complaint at ¶ 1. Plaintiff explained that he had applied for the SAC position in Philadelphia, but was informed in January 1999 that he had not been selected. Id. at ¶¶ 13-14. He further alleges that "[o]n or about August 1, 1999, ASAC Kim Turnpaugh, a white female agent, was promoted to SAC of Atlanta where she had been ASAC for two years" and "was promoted in place without having to relocate." Id. at ¶ 16.

3

II. **Discussion**

Pursuant to its authority to enforce the federal employment provisions of Title VII, the EEOC has set statutory requirements for federal employees to file a civil action. The EEOC has established strict time limits for seeking informal adjustment of complaints, filing formal charges, and appealing agency decisions to the EEOC. See Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1997); 29 C.F.R. Part 1614 (Federal Sector Equal Employment Opportunity). Regulations provide that "(a)ggrieved persons who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age or handicap must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter." 29 C.F.R. §1614.105(a). Moreover, "[a]n aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. §1614.105(a)(1). If the counseling fails to resolve the complainant's concerns, then he may file a discrimination complaint "with the agency that allegedly discriminated against the complainant." 29 C.F.R. §1614.106(a). "Complainants must timely exhaust these administrative remedies before bringing their claims to court." Bowden, 106 F.3d at 437 (citing Brown v. GSA, 425 U.S. 820, 832-833 (1976)). The failure to exhaust administrative remedies is an affirmative defense that the defendant bears the burden of pleading and proving. Id. at 437.

At the time that this case was briefed, the law in this Circuit was that a continuing violation is established where a plaintiff proves a "series of related [discriminatory] acts, one or more of which falls within the limitations period, or the maintenance of a discriminatory system both before and during the [limitations] period." Valentino v. U.S. Postal Service, 674 F.2d 56,

65 (D.C.Cir. 1982) (citations omitted). According to Thompson, he properly complained to EPA in August 1999 within 45 days of Turnpaugh's selection for the Atlanta SAC position because he identified a series of related discriminatory promotion decisions, including the promotion he did not receive to the Philadelphia SAC position in January 1999.

Thompson characterizes his cause of action as challenging a "pattern and practice" of discrimination, but it is doubtful that Thompson, as an individual plaintiff who is not part of a class action, could bring a pattern and practice claim. The Supreme Court has only recognized "pattern and practice" discrimination claims in two contexts: when the government brings suit on behalf of others or in a private class action. See International Brotherhood of Teamsters v. U.S., 431 U.S. 324, 360 (1977); Franks v. Bowman Transportation Co., 424 U.S. 747, 772 (1976). Nearly every court considering the issue has found that a pattern and practice claim is not available to a private, non-class action plaintiff.[1] It is apparent here that Thompson has alleged a "continuing violation" theory that challenges a particular "practice" at EPA. Hence, Thompson contends that the failure to promote him in place to SAC in Philadelphia, and the promotion in place of Kim Turnpaugh to SAC in Atlanta, are examples of the same on-going discriminatory

---

[1] See, e.g., Celestine v. Petroleos De Venezuella SA, 266 F.3d 343, 355 (5th Cir.2001) ("The typical pattern or practice discrimination case is brought either by the government or as a class action to establish 'that unlawful discrimination has been a regular procedure or policy followed by an employer or group of employers.'"); Lowery v. Circuit City Stores, Inc. 158 F.3d 742, 759 (4th Cir.1998), vacated on other grounds, 527 U.S. 1031 (1999) ("individuals do not have a private, non-class cause of action for pattern or practice discrimination"); Babrocky v. Jewel Food Co., 773 F.2d 857, 866-67 n.6 (7th Cir.1985) (pattern-or-practice "suits, by their very nature, involve claims of classwide discrimination"); see also Wagner v. Taylor, 836 F.2d 578, 592 n. 94 (D.C. Cir. 1987) ("The term 'pattern or practice' initially referred to suits brought by EEOC under 42 U.S.C. § 2000e-6(c) (1982), but the Supreme Court has recognized that the elements of such a case are the same as those of a private class action. . . Thus, class-wide allegations of discrimination are commonly referred to as 'pattern or practice' cases.").

practice that prohibits African-Americans from being promoted without having to relocate.

Defendant claims that Thompson did not raise his complaint with EPA within the 45-day period required by 29 C.F.R. § 1614.106(a). Thompson raised his complaint with EPA on August 11, 1999 – ten days after EPA promoted Kim Turnpaugh in Atlanta without requiring her to relocate. Thompson had not applied for the Atlanta position, nor had he applied for positions in Los Angeles or San Francisco, where EPA promoted a white woman and an Hispanic male without requiring relocation. Thompson had applied (and been rejected) for the SAC position in Philadelphia, some seven months before he raised a complaint with EPA on August 11, 1999. To get around the fact that he did not file a complaint within 45 days of EPA's refusal to promote him, Thompson argues that EPA's practice of only promoting non-African Americans in place is a "continuing violation" that reoccurred when EPA promoted Turnpaugh on August 1, 1999.

However, the Supreme Court's recent decision in National R.R. Passenger Corp. v. Morgan, 122 S.Ct. 2061 (2002), is fatal to any continuing violation theory that might otherwise save Thompson's claims. In National R.R., the Court held that, under Title VII, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." 122 S.Ct. at 2072. As the Court explained, "[e]ach incident of discrimination . . . constitutes a separate actionable 'unlawful employment practice'" for which a timely complaint must be filed. Id. at 2073. The Court rejected the contention that a claim based upon a discrete discriminatory act occurring outside the limitations period can be saved from untimeliness if it is "plausibly or sufficiently related" to another discriminatory act for which a timely claim has been filed. Id. at 2072-73. Rather, each discrete discriminatory act, such as a failure to promote, "starts a new clock for filing charges alleging that act." Id. at 2072.

6

In light of National R.R., Thompson's claims cannot survive. On the very first page of his complaint, he alleges that he was not selected for the SAC position in Philadelphia. Complaint ¶ 1. "The essence of my complaint," Thompson stated in his affidavit attached to his EEO complaint, "is that I was discriminated against based on my race (African American) when I was not selected for the Special Agent in Charge position in Philadelphia and therefore was not 'selected in place' from within the Philadelphia Office." Def. Ex. 3, Thompson Affidavit at p. 1. Thompson learned in January 1999 that EPA selected Lori Hanson, a white female who was also an Assistant SAC in Philadelphia at the time.[2] Given that Hanson was promoted without having to relocate, Thompson certainly knew (or should have known) that a white applicant had been promoted to a SAC position "in place."[3]

Because Thompson did not contact an EEO office until August 11, 1999 – more than six months after he learned that Hanson had been promoted in place – his claim relating to the Philadelphia promotion was not raised within 45 days of the alleged discriminatory act. As the applicable regulation states, "[a]n aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1) (emphasis added).

---

[2] Complaint at ¶¶ 13-14; see also Pl.'s Opposition, Ex. 4., p. 10-11.

[3] Thompson claims that he asked his supervisors in Philadelphia why he was not promoted, but they never told him. He therefore contends that he was not aware that the reason for the denial of his promotion was discriminatory. But Thompson was certainly aware when he was denied the promotion that a white person was promoted in place – an issue which is the heart of his discrimination claim. Moreover, in his complaint to the agency, Thompson stated that "shortly after [learning in January 1999 that he would not be promoted] I contacted an attorney . . . to assess my ability to file an EEO complaint against what I perceived as racial discrimination." Pl.'s Opposition, Ex. 4 (Complaint at p. 12). Hence, plaintiff believed he had been discriminated against, but chose not to file a complaint.

Thompson was the "aggrieved person" when he was denied the SAC promotion in Philadelphia in January 1999. Thompson did not complain about this discrimination until August 11, 1999 – far past the 45-day time limit. The "matter alleged to be discriminatory" is the denial of the Philadelphia promotion in January 1999, not Turnpaugh's promotion in Atlanta in August 1999 since Thompson did not apply for that job. No matter how it is construed, there was no action or conduct that affected Thompson within 45 days of his complaint to the EEO office. Even in a claim of continuing violation, the same effective date would trigger the 45-day limitations period in the case of an ongoing pattern of discrimination because, in such a case, the "deadlines run from the time of the discriminatory act." Young v. National Ctr. for Health Servs. Research, 828 F.2d 235, 237 (4th Cir.1987) (emphasis added). The only actionable discriminatory act involving Thompson was the denial of a promotion in January 1999.

Nor is Thompson's claim saved because he contacted an EEOC counselor within 45 days of Turnpaugh's promotion to the SAC position in Atlanta on August 1, 1999. Thompson has lodged this claim under the rubric of a "pattern and practice of discrimination." See Complaint at ¶¶ 22-28. To deflect attention from the fact that he first contacted an EEO counselor more than six months after the denial of the Philadelphia promotion, Thompson challenges the overall "process" and "policy" of promotions at EPA:

> [T]he complaint filed and accepted by the [EPA] did not involve the position in Philadelphia but the position in Atlanta thus, it is clear that the events surrounding the selection for the position in Philadelphia were not at issue but the process for the selection in Atlanta and the policy of selecting in place non African American Special Agents in Charge.

Pl.'s Opposition at p. 3. "In fact," he adds, "the claim as to the incident in Philadelphia was only one more incident which showed the methods applied to African American applicants for a

8

position while not applied to the non African American applicants." Pl.'s Opposition at p. 4.

As his complaint filed with the EEO stated, Turnpaugh's promotion on August 1, 1999, "was the latest incident that triggered my decision to file this EEO complaint." Pl.'s Opposition, Ex. 4 ("Complaint and Chronology" at p. 14). But Turnpaugh's promotion did not discriminate against Thompson, because he did not even apply for that position. In light of National R.R., a Title VII plaintiff's claim must arise out of a "discrete discriminatory act," and Thompson's pattern and practice claim cannot stand. The only "discrete discriminatory act" that involves Thompson was his non-promotion to the SAC position in Philadelphia in January 1999 – more than six months before he complained to the EEO office.

Plaintiff also argues that the Court should allow equitable tolling of the 45-day time limit to ensure the "broad humanitarian and remedial purposes underlying the statute." Pl.'s Opposition at p. 10. Plaintiff bears the "burden of pleading and proving in the district court any equitable reasons for his failure to meet the [45-day] requirement." Saltz v. Lehman, 762 F.2d 207, 209 (D.C. Cir. 1982). The Supreme Court has cautioned that equitable doctrines should be "applied sparingly." National R.R., 122 S.Ct. at 2072; see also Washington v. WMATA, 160 F.3d 750, 753 (D.C. Cir. 1998) (the "court's equitable power to toll the statute of limitations will be exercised only in extraordinary and carefully circumscribed instances"). Thompson has not demonstrated the requisite circumstances for application of equitable doctrines tolling the 45-day filing period under the statute.

It is true that the requirements for timely filing of administrative claims "are not jurisdictional prerequisites to suit, but are more 'like a statute of limitations, [which] is subject to waiver, estoppel, and equitable tolling.'" Jarrell v. U.S. Postal Service, 753 F.2d 1088, 1091

9

(D.C. Cir. 1985) (quoting <u>Zipes v. Trans World Airlines, Inc.</u>, 455 U.S. 385, 393 (1982)). The doctrine of equitable estoppel "prevents a defendant from asserting untimeliness where the <u>defendant</u> has taken active steps to prevent the plaintiff from litigating in time." <u>Currier v. Radio Free Europe/Radio Liberty, Inc.</u>, 159 F.3d 1363, 1367 (D.C. Cir. 1998) (emphasis in original). The principle of equitable tolling "allows a plaintiff to avoid the bar of the limitations period if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim." <u>Id.</u>[4] In <u>Washington v. WMATA</u>, the court noted that equitable tolling has generally been allowed in situations where the claimant has "actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass," but that courts have "generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights." 160 F.3d at 752.

Thompson certainly should have been aware of EPA's alleged pattern and practice of discrimination no later than January 29, 1999, when he was denied a promotion in favor of a white person who was promoted in place. Indeed, Thompson also should have been aware that two other non-African Americans were promoted in place in March 1999. He has not alleged

---

[4] Certain equitable bases for extending the 45-day time limit in an administrative context are identified at 29 C.F.R. § 1614.105(a)(2):

> The agency or the Commission shall extend the 45-day time limit . . . when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have . . . known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission.

10

any conduct by defendants showing that he was duped into sitting on his claims. In fact, as Thompson's own EEO complaint shows, he contacted an attorney "shortly after" he learned in late January 1999 that he was denied a promotion, but chose not to pursue a claim because he "did not want to go through the stress of fighting a discrimination claim." Pl.'s Opposition, Ex. 4 (Complaint at p. 12). In Williams v. Munoz, 106 F.Supp.2d 40 (D.D.C. 2000), the court specifically rejected a similar claim for equitable tolling:

> [S]he asserts that she only later became aware of the reasons for her non-promotion. That theory was rejected in Cones v. Shalala, 945 F.Supp. 342, 347 (D.D.C. 1996), rev'd on other grounds, 199 F.3d 512 (D.C. Cir. 2000), and will be rejected here as well. Ms. Williams knew that she had not been promoted and that her non-African American co-workers had been promoted. She reasonably should have suspected that there might be discriminatory reasons, and should have investigated. This is not a sufficiently 'extraordinary' case to warrant equitable tolling.

106 F.Supp.2d at 43. Thompson makes the same argument here for not raising a claim back in January 1999 because his supervisors had not told him why he was not promoted. Thompson knew, however, that the promotion went to a white person, and that she did not have to relocate for the job. As in Munoz, then, there is no basis for equitable tolling here.

## CONCLUSION

Thompson has not complied with the 45-day statutory time limit within which an aggrieved person must initiate contact with an EEO counselor and raise a claim. He waited more than six months after the denial of the Philadelphia promotion to raise a claim, and he never applied for the Atlanta or other positions he references in his complaint. Furthermore, he cannot assert a "continuing violation" in light of the Supreme Court's recent decision in National R.R., which requires a "discrete discriminatory act" within the statutory time limit. Finally, Thompson

11

has not met his burden of showing entitlement to equitable tolling under the strict requirements for application of that doctrine. Accordingly, EPA's motion to dismiss is granted. A separate order has been issued on this date.

Signed this __28___ day of August, 2002.

_____/s_____
John D. Bates
United States District Judge

Copies to:

Karl W. Carter, Jr.
2000 L Street, NW
Suite 200
Washington, D.C. 20036
Counsel for plaintiff

Stratton C. Strand
United States Attorney's Office
Judiciary Center Building
10th Floor
555 Fourth Street, NW
Washington, D.C. 20001
Counsel for defendant