UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DONOVAN J. LEIGHTON,                      )
                                          )
            Plaintiff,                    )
                                          )
      v.                                  ) Civil Action No. 05-1835 HHK
                                          )
ALBERTO GONZALES,                         )
   U.S. Attorney General,                 )
                                          )
            Defendant.                    )
_____ )

DEFENDANT'S MOTION TO DISMISS OR,
IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Defendant, by and through undersigned counsel, hereby
moves to dismiss this action pursuant to Rule 12(b)
(1) and (6) or, alternatively, for summary judgment pursuant to
Rule 56 of the Federal Rules of Civil Procedure.  The grounds
being that plaintiff was untimely in filing this action and
otherwise fails to state a claim upon which relief can be
granted.  Moreover, as to any claim not properly and timely
exhausted in the administrative process, plaintiff may not raise
the claim in this action.  And, insofar as Plaintiff may be
seeking to challenge "policies, practices and procedures of the
FBI [that allegedly] have operated to have disparate impact on
African-American Special Agents with regard to promotions,
assignments, awards, bonuses and other forms of official
recognition" (Complaint, ¶ 38), his attempt to litigate those

claims separate from the settlement in his prior class action[1] is barred by the settlement in that case and the doctrines of collateral estoppel and/or _res judicata_.  Thus, there is no genuine issue as to any material fact and defendant is entitled to judgment as a matter of law.  In an effort to narrow the issues in this action, Defendant further moves to strike any claims resolved through this motion, pursuant to Fed. R. Civ. P. 12(f) (allowing the Court to strike, _inter alia_, portions of a pleading that are "immaterial" or "impertinent").

In support of this Motion, Defendant respectfully refers the Court to the accompanying Memorandum of Points and Authorities, and proposed Order.

Respectfully submitted,

_____
KENNETH L. WAINSTEIN, DC Bar #451058
United States Attorney


_____
R. CRAIG LAWRENCE, DC Bar #171538
Assistant United States Attorney


_____
W. MARK NEBEKER, DC Bar #396739
Assistant United States Attorney

---

[1] _See_ _Emmanuel Johnson, Jr._ v. _Attorney General of the United States_, Civil Action No. 93-0206 TFH (Complaint, ¶ 8).

-2-

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DONOVAN J. LEIGHTON,                  )
                                      )
          Plaintiff,                  )
                                      )
     v.                               ) Civil Action No. 05-1835 HHK
                                      )
ALBERTO GONZALES,                     )
  U.S. Attorney General,              )
                                      )
          Defendant.                  )
_____   )

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

I.  INTRODUCTION

     Plaintiff has instituted this employment discrimination
action, seeking to challenge numerous occurrences during his
tenure as a Special Agent with the Federal Bureau of
Investigation ("FBI").  The record establishes that Plaintiff was
untimely is filing the action, which warrants dismissal.
Moreover, he has failed to exhaust administrative remedies as to
those claims not timely raised at the administrative level
(Counts I, II and III as well as any effort to secure an Senior
Executive Service ("SES") position[1] for which he does not allege
he ever applied).  Moreover, Plaintiff's Pattern and Practice
claim (Count II), cannot be maintained in this action; and Count
II along with his Disparate Impact claim (Count III), would be
subsumed in his prior class action and is thus barred by the
settlement in that case, by collateral estoppel and/or res

_____

     [1]  See Complaint, ¶ 47(g).

<u>judicata</u>.  Also, many of Plaintiff's allegations fail to satisfy the standard of an "adverse personnel action" such as would be actionable under Title VII.  <u>See</u> <u>Brown</u> v. <u>Brody</u>, 199 F.3d 446, 456 (D.C. Cir. 1999) (requiring an adverse personnel action to include "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits").  Finally, in the event that not all claims are dismissed, Defendant asks that the Court strike from the Complaint all allegations except those that remain and were appropriately exhausted.

III.  <u>ARGUMENT</u>

A.  <u>Plaintiff Was Untimely In Filing This Action.</u>

Under Title VII, a person may file suit as follows:

> <u>Within 90 days of receipt of notice of final</u> <u>action taken by a department, agency, or unit</u> referred to in subsection (a) of this section, or by the Equal Employment Opportunity Commission upon an appeal from a decision or order of such department, agency, or unit on a complaint of discrimination based on race, color, religion, sex or national origin, brought pursuant to subsection (a) of this section, Executive Order 11478 or any succeeding Executive orders, or after one hundred and eighty days from the filing of the initial charge with the department, agency, or unit or with the Equal Employment Opportunity Commission on appeal from a decision or order of such department, agency, or unit until such time as final action may be taken by a department, agency, or unit, <u>an employee</u> or applicant for employment, if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, <u>may file a civil action as</u> <u>provided in section 2000e-5 of this title</u>, in which civil action the head of the department, agency, or

-2-

unit, as appropriate, shall be the defendant.
42 U.S.C. § 2000e-16(c) (emphasis added).

An untimely complaint may be dismissed based on a motion pursuant to Fed. R. Civ. P. 12. See Currier v. Radio Free Europe/Radio Liberty, Inc., 159 F.3d 1363, 1366 n.3 (D.C. Cir. 1998) (citing Smith-Haynie v. District of Columbia, 155 F.3d 575, 578 (D.C. Cir. 1998) (where the Court held that "an affirmative defense may be raised by pre-answer motion under Rule 12(b) when the facts that give rise to the defense are clear from the face of the complaint.")).

In this instance, Plaintiff has attached to the Complaint a copy of the June 7, 2005 letter notifying Plaintiff of the agency's final decision. See Complaint, Attachment. Thus, the Court need look no further than the pleadings to assess the viability of the action. Nevertheless, Defendant has also provided a declaration, evidencing the date of service of the final agency decision. See Carson Decl., ¶ 5.[2]

---

[2] To the extent that the Court may rely on matters outside of the pleadings, the Court may enter summary judgment in favor of the defendant. See Fed. R. Civ. P. 12(b); 56. Plaintiff should take notice that any factual assertions contained in the documents in support of this motion may be accepted by the Court as true unless the plaintiff submits his own affidavit or other appropriate documentary evidence contradicting the assertions in the documents. See Neal v. Kelly, 963 F.2d 453, 456-57 (D.C. Cir. 1992), Local Rule 7(h); 56.1 and Fed. R. Civ. P. 56(e), which provides as follows:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively

In this action, Plaintiff was mailed the notice of final action on June 7, 2005, and is deemed to have received the document three days later, i.e. on June 10, 2005.  See Complaint, Attachment; Carson Decl., ¶¶ 1-7; Smith-Haynie v. District of Columbia, 155 F.3d at 578 n.3 (citing Baldwin County Welcome Center v. Brown, 466 U.S. 147, 148 and n.1 (1984) (3-day period of Fed. R. Civ. P. 6(e) applies to calculate receipt of notice under Title VII)).

Thus, Plaintiff was to initiate any civil action on or before September 9, 2005.[3]  Plaintiff's Complaint, which is dated September 13, 2005, was not filed until September 16, 2005.  See Complaint, Docket Entry No. 1.  The Court should therefore dismiss this claim for failure to timely file suit.  Brown v.

---

that the affiant is competent to testify to the matters stated therein.  Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.  The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.  When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

[3]  The 90th day after June 10, 2005, was Sunday, September 8, 2005.  But, by operation of Rule 6, Plaintiff's time to file was the end of the next business day. See Fed. R. Civ. P. 6(a).

GSA, 425 U.S. 820, 822-23, 835 (1976) (case properly dismissed
where plaintiff failed to file timely complaint within the 30
days then allowed); Irwin v. Veterans Administration, 498 U.S. 89
(1990) (dismissal of Title VII suit was proper where, in the
absence of exceptional circumstances, Plaintiff failed to file
suit within the time prescribed); Smith-Haynie v. District of
Columbia, 155 F.3d at 578.

    B.  Plaintiff Has Failed To Exhaust Administrative
Remedies For Certain Claims.

    In order to raise a claim under Title VII, a plaintiff must
exhaust administrative remedies by contacting an Equal Employment
Opportunity ("EEO") counselor within forty-five (45) days of the
alleged discriminatory event.  Park v. Howard University, 71 F.3d
904, 907 (D.C. Cir. 1995); 42 U.S.C. § 2000e-16(c); 29 C.F.R. §
1614.105(a)(1) ("An aggrieved person must initiate contact with a
Counselor within 45 days of the date of the matter alleged to be
discriminatory or, in the case of personnel action, within 45
days of the effective date of the action.").[4]

    A lawsuit under Title VII is limited to "claims that are
'like or reasonably related to the allegations of the [EEOC]
charge and growing out of such allegations.'"  Kidane v.
Northwest Airlines, Inc., 41 F.Supp.2d 12, 15 (D.D.C. 1999)

_____

    [4]  The EEOC regulations governing exhaustion require that
the 45-day limitations period is triggered when a "complainant
should reasonably suspect discrimination, but before all the
facts that would support a charge of discrimination have become
apparent."  29 C.F.R. § 1614.105(b).

(quoting <u>Park</u>, 71 F.3d at 907); <u>see also Park</u> v. <u>Howard</u>
<u>University</u>, 71 F.3d 904, 907 (D.C. Cir. 1995) (quoting <u>Cheek</u> v.
<u>Western and Southern Life Ins. Co.</u>, 31 F.3d 497, 500 (7th Cir.
1994)); <u>Hunt</u> v. <u>D.C. Department of Corrections</u>, 41 F.Supp.2d 31,
36 (D.D.C. 1999). This requirement gives the agency notice of
the charge and allows the parties to attempt conciliation without
resorting to the courts. <u>Id</u>. "A court cannot allow liberal
interpretation of an administrative charge to permit a litigant
to bypass the Title VII administrative process." <u>Park</u>, 71 F.3d
at 907.[5]

At a minimum, the Title VII claims must arise from "the
administrative investigation that can reasonably be expected to
follow the charge of discrimination." <u>Chisholm</u> v. <u>United States</u>
<u>Postal Service</u>, 665 F.2d 482, 491 (4th Cir. 1981). The
administrative charge requirement serves the important purposes
of giving the charged party notice of the claim and "narrow[ing]
the issues for prompt adjudication and decision." <u>Laffey</u> v.
<u>Northwest Airlines, Inc.</u>, 567 F.2d 429, 472 n.325 (D.C. Cir.
1976). Although it is true that the administrative charge

---

[5] The 45-day time requirement is not jurisdictional, but
operates like a statute of limitations. <u>Bayer</u> v. <u>U.S. Department</u>
<u>of Treasury</u>, 956 F.2d 330, 332 (D.C. Cir. 1992); <u>Gilmore</u> v. <u>Reno</u>,
33 F. Supp.2d 20, 24 (D.D.C. 1998). Plaintiff bears the burden
of pleading and proving equitable reasons for failure to comply
with the 45-day requirement. <u>Bayer</u>, 956 F.2d at 333. The power
to equitably toll the statute of limitation, however, is
"exercised only in extraordinary and carefully circumscribed
instances." <u>Smith-Haynie</u> v. <u>District of Columbia</u>, 155 F.3d 575,
580 (D.C. Cir. 1998) (internal quotations and citation omitted).

requirement should not be construed to place a heavy technical burden on "individuals untrained in negotiating procedural labyrinths," Loe v. Heckler, 768 F.2d 409, 417 (D.C. Cir. 1985), it is also true that "the requirement of some specificity in a charge is not a 'mere technicality.' " Rush v. McDonald's Corp., 966 F.2d 1104, 1111 (7th Cir. 1992). A court cannot allow liberal interpretation of an administrative charge to permit a litigant to bypass the Title VII administrative process. Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398 (3d Cir. 1976).

The reason for this is clear under the statutory framework - - a plaintiff must exhaust his or her administrative remedies and the agency must be given the initial opportunity to resolve the issue internally. Lamont v. Forman Bros., Inc., 410 F. Supp. 912, 917 (D.D.C. 1976). The agency is unable to carry out its responsibilities under Title VII if it is not timely and fully informed of the basis of the complaint. As the court observed in Milton v. Weinberger, 645 F.2d 1070, 1077 (D.C. Cir. 1981), the reasons for limiting claims to present violations is to "protect employers from the burden of defending claims arising from employment decision that are long past. Delaware State College v. Rick, [449] U.S. [261] (1980)."

Summary judgment or dismissal is appropriate in cases, such as this, where the plaintiff has failed to exhaust administrative

remedies, <u>Jensen</u> v. <u>Frank</u>, 912 F.2d 517 (1st Cir. 1990); <u>Saltz</u> v.
<u>Lehman</u>, 672 F.2d 207 (D.C. Cir. 1982); <u>Ethnic Employees of the</u>
<u>Library of Congress</u> v. <u>Boorstin</u>, 751 F.2d 1405 (D.C. Cir. 1985);
<u>DeMedina</u> v. <u>Reinhardt</u>, 444 F. Supp. 573 (D.D.C. 1978), and where
the plaintiff did not timely file suit.  <u>Brown</u> v. <u>GSA</u>, 425 U.S.
at 829-33.

The only issues that Plaintiff has presented for exhaustion
through the Agency's administrative remedies are as follows:[6]

> <u>Issue 1.</u>  Whether Mr. Leighton was discriminated
> against based on his race (African American) and
> reprisal when: on or about September 10, 2002, he
> learned that he was not selected to attend the 45th
> Session of the Senior Seminar, Foreign Service
> Institute, Department of State; and
>
> <u>Issue 2.</u>  Whether Mr. Leighton was discriminated
> against based on his race (African American) and
> reprisal when: on or about December 18, 2002, he was
> not presented with an incentive award.
>
> <u>Issue 3.</u>  Whether Mr. Leighton was discriminated
> against based on race (African America) and reprisal
> when on or about December 17, 2002,  he learned that he
> was not selected for the position of Legal Attache,
> Legat Manilla.
>
> <u>Issue 4.</u>  Whether Mr. Leighton was discriminated
> against based on race (African America) and reprisal
> when on or about March 28, 2003, he was denied the
> opportunity to participate in a top priority
> investigation.
>
> <u>Issue 5.</u>  Whether Mr. Leighton was discriminated
> against based on race (African American) and reprisal
> when on or about April 1, 2003 he was subject of a
> direct management referral to the Employee Assistance

---

[6]  Defendant does not necessarily concede that these issues
were timely exhausted.

Program for anger management.

See Statement of Material Facts, ¶¶ 1-23.  Thus, even were the Court somehow to conclude that Plaintiff was timely in filing this action, all other claims should be dismissed for failure to exhaust and the allegations stricken from the Complaint.

Mr. Leighton, for instance, did not exhaust his administrative remedies with regard to Counts I, II and III in that these theories of discrimination were never mentioned in his administrative complaint and were therefore never investigated. When an EEO charge alleges a particular theory of discrimination, allegations of a different type of discrimination in a subsequent complaint are not reasonably related to them unless the allegations in the complaint can be reasonably inferred from the facts alleged in the charge.  Cheek, supra at 503.

Counts I, II and III should therefore be dismissed for failure to exhaust and the allegations related to those claims stricken.

C.  Many of The Claims Plaintiff Asserts Are Not Personnel Actions.

Defendant submits that at least Issue Nos. 1, 4 and 5 do not constitute personnel actions within the meaning of the discrimination statutes.[7]  Accordingly, these claims are not

---

[7]  Defendant does not concede that the remaining issues are, in fact, sufficiently material to constitute adverse personnel actions.  If such claims later prove insufficient to satisfy the standard, Defendant reserves the right to seek dismissal of those issues as well.

subject to redress in this action.

In Brown v. Brody, 199 F.3d 446 (D.C. Cir. 1999), the Court
of Appeals held that a common element for discrimination and
retaliation claims against federal employers, and private
employers, "is . . . some form of legally cognizable adverse
action by the employer." Brown, 199 F.3d at 453.  The Court
rejected the contention that "any sort of personnel action
undertaken for discriminatory reasons suffices." See id. at 453.
(emphasis added).  Instead, a plaintiff must demonstrate that he
has suffered "materially adverse consequences affecting the
terms, conditions, or privileges of her employment or her future
employment opportunities such that a reasonable trier of fact
could conclude that the plaintiff has suffered objectively
tangible harm." Id. at 457.  Specifically, to meet the "adverse
personnel action" requirement, the plaintiff must make a clear
showing of a material adverse employment action that involves
tangible effect on plaintiff's employment, such as "hiring,
firing, failing to promote, reassignment with significantly
different responsibilities, or a decision causing a significant
change in benefits." Id. at 456 (quoting Burlington Industries,
Inc. v. Ellerth, 524 U.S. 742, 761 (1998)) (other citations
omitted).  Based on this definition, the D.C. Circuit held in
Brown that the plaintiff's claims regarding an involuntary
lateral transfer, the denial of a bid for a desired transfer, a

-10-

"fully satisfactory" evaluation, and a letter of admonishment,
did not rise to the level of adverse personnel actions.  Id. at
459-60.[8]  The conclusion was recently reiterated:

> The clear trend of authority . . . is to hold that a
> purely lateral transfer, that is, a transfer that does
> not involve a demotion in form or substance, cannot
> rise to the level of a materially adverse employment
> action. . . . .  In short, there are few circumstances
> in which a mere lateral transfer can rise to the level
> of an adverse employment action, and we have expressly
> rejected a subjective test in this context.  See, e.g.,
> Stewart v. Ashcroft, 352 F.3d 422 (D.C. Cir. 2003)
> (employee was passed over for position as section
> chief); Freedman v. MCI Telecomms. Corp., 255 F.3d 840
> (D.C. Cir. 2001) (employee was transferred from day
> shift to night shift, interfering with his education).
> Jones's evidence, viewed in the light most favorable to
> her, establishes several reasons the tower assignment
> was undesirable.  Though other assignments at the
> Occoquan facility may have had their own idiosyncratic
> disadvantages, a jury could reasonably infer from
> Jones's evidence that the tower assignment was
> generally less favorable than other assignments. But
> that fact, if true, does not make the assignment an
> adverse employment action.

Jones v. District of Columbia Dept. of Corrections, 429 F.3d 276,
281 (D.C. Cir. 2005).  It seems that if a transfer cannot support
a claim of discrimination, that a failure to transfer cannot
either.  See Emmanuel Johnson v. Maddox, 230 F.Supp.2d 1, 9
(D.D.C. 2002) (a plaintiff who is made to undertake or who is
denied a lateral transfer -- that is, one in which she suffers no

---

[8]  Importantly, the Brown panel emphasized that this section
of its opinion had been circulated and approved by the entire
Court and that it thus constituted the law of the Circuit.  See
Brown, 199 F.3d at 455 (citing Irons v. Diamond, 670 F.2d 265,
268 n.11 (D.C. Cir. 1981)).

-11-

diminution in pay or benefits -- does not suffer an actionable
injury *unless* there are some *other materially adverse
consequences* affecting the terms, conditions, or privileges of
her employment or her future employment opportunities such that a
reasonable trier of fact could conclude that the plaintiff has
suffered objectively tangible harm, and the plaintiff's vague
assertion that transfer deprived him of the ability to maximize
liaison opportunities was insufficient to survive).

Similarly:

> Changes in assignments or work-related duties do not
> ordinarily constitute adverse employment actions if
> "unaccompanied by a decrease in salary or work hour
> changes." Mungin v. Katten, Muchin & Zavis, 116 F.3d
> 1549, 1556-57 (D.C. Cir. 1997).

Amiri v. Stoladi Property Group, Civil Action No. 05-447 RJL,
2005 WL 3211682, *4 (D.D.C. Oct. 4, 2005).

Here, Mr. Leighton's allegations in Issues 1, 4 and 5 amount
to claims that he was not selected to attend a particular
training seminar apparently offered with some frequency ("the
45th Session of the Senior Seminar, Foreign Service Institute,
Department of State") (Issue 1); he was denied the opportunity to
participate in one top priority investigation of interest to him
(Issue 4);[9] and he was the subject of a referral to the Employee

---

[9] Plaintiff alleges, in part, that, because he was not
truly indispensable, his request to deploy to Trinidad should
have been granted and that it was denied "to constrain the
Plaintiff's performance." Complaint, ¶¶ 25-26. Plaintiff's only
performance evaluations mentioned in the Complaint are, however,

Assistance Program for anger management after he sent an e-mail (Issue 5).[10]  With respect to Issues 1 and 4, it is significant to note that notwithstanding his non-selection for these duties, Plaintiff's work with the FBI has given him "extensive international operations experience having served as Legal Attache at Legat Bridgetown during the period 1998-2001 as well as temporary duty assignments [in four other locations];" and Plaintiff has reached a Grade level of GS-15. See Complaint, ¶ 7.

None of these alleged actions is alleged to have had any effect on Plaintiff's grade, pay level, or benefits, and none had any identifiable adverse consequences affecting the terms, conditions or privileges of Plaintiff's employment.  See Complaint, ¶¶ 15, 25-28;[11] Jones, supra; Amiri, supra; Emmanuel Johnson v. Maddox, 230 F.Supp.2d at 9.

D.  Plaintiff's Pattern and Practice Claim (Count II) Cannot Be Maintained in this Action

The Supreme Court has only recognized "pattern and practice" discrimination claims in two contexts: when the government brings suit on behalf of others or in a private class action.   See International Bhd. of Teamsters v. United States, 431 U.S. 324,

rated him "Exceptional" or "Superior".  Complaint, ¶¶ 8, 18; see also id., ¶ 20.

[10]  A copy of the e-mail is attached.  See Exhibit A.

[11]  Plaintiff does claim some entitlement to relief in the form of an promotion to an SES position, but he has never exhausted any claim regarding a non-selection for such a position.  See Statement Of Material Facts, ¶¶ 1-23.

360 (1977); <u>Franks</u> v. <u>Bowman Transp. Co.</u>, 424 U.S. 747, 772
(1976).

    Nearly every court considering the issue has found that a
pattern and practice claim is not available to a private, non-
class action plaintiff.  See, <u>e.g.</u>, <u>Celestine</u> v. <u>Petroleos De
Venezuella SA</u>, 266 F.3d 343, 355 (5th Cir. 2001) ("The typical
pattern or practice discrimination case is brought either by the
government or abs a class action to establish 'that unlawful
discrimination has been a regular procedure or policy followed by
an employer or group of employers.'"); <u>Lowery</u> v. <u>Circuit City
Stores, Inc.</u>, 158 F.3d 742, 759 (4th Cir. 1998), *vacated on other
grounds*, 527 U.S. 1031 (1999) ("individuals do not have a
private, non-class cause of action for pattern or practice
discrimination"); <u>Babrocky</u> v. <u>Jewel Food Co.</u>, 773 F.2d 857, 866-
67 n.6 (7th Cir. 1985) (pattern-or-practice "suits, by their very
nature, involve claims of classwide discrimination"); <u>see also</u>
<u>Wagner</u> v. <u>Taylor</u>, 836 F.2d 578, 592 n. 94 (D.C. Cir. 1987) ("The
term 'pattern or practice' initially referred to suits brought by
EEOC under 42 U.S.C. § 2000e-6(c) (1982), but the Supreme Court
has recognized that the elements of such a case are the same as
those of a private class action. . . Thus, class-wide allegations
of discrimination are commonly referred to as 'pattern or
practice' cases.").

    Regardless, however, of whether the Supreme Court would

-14-

treat a pattern-or-practice claim in the same manner as a "discrete act" claim, Plaintiff, as an individual litigant, is not authorized to assert a pattern-or-practice claim.  See Thompson v. Whitman, Civil Action No. 01-2105 JDB, slip op. at 5 (D.D.C. Aug. 28, 2002) (copy attached as Exhibit T).   Relying on, inter alia, the Supreme Court's decisions in International Brotherhood of Teamsters v. United States, 431 U.S. at 360 and Franks v. Bowman Transp. Co., 424 U.S. at 772, the Thompson Court specifically rejected Thompson's attempt to circumvent National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 112-13 (2002), by characterizing his claim as a pattern-or-practice claim, holding that "Thompson's pattern and practice claim cannot stand."  Id. at 9.

    As this Court stated in Oliver-Simon v. Principi, Civil Action No.  01-2169 JDB (D.D.C. Oct. 31, 2002) (copy attached as Exhibit U): "[t]here is no reason to believe . . . that the Supreme Court would not apply the rationale expressed in Nat'l R.R. [i.e. Morgan] to [pattern-or-practice] cases if the issue were presented to it.  Otherwise, the decision in Nat'l R.R. would be denied much of its force by plaintiffs routinely attaching a 'pattern and practice' label to claims involving two or more non-selections for promotion."  Oliver-Simon v. Principi, Slip op. at 7-10.

    In Oliver-Simon, this Court stated:

-15-

> Cases in this Circuit are consistent with the view that
> a pattern or practice allegation is a distinct claim,
> generally reserved for class actions.  <u>See</u> <u>Wagner</u> v.
> <u>Taylor</u>, 836 F.2d 578, 592 n.94 (D.C. Cir. 1987) ("The
> term 'pattern or practice' initially referred to suits
> brought by the EEOC under 42 U.S.C. § 2000e-6(c)
> (1982), but the Supreme Court has recognized that the
> elements of such a case are the same as those of a
> private class action. . . .  Thus, class-wide
> allegations of discrimination are commonly referred to
> as 'pattern or practice' cases."); <u>Williams</u> v.
> <u>Boorstin</u>, 663 F.2d 109, 115 n. 38 (D.C. Cir. 1980) (in
> individual case, as opposed to class action, pattern or
> practice evidence is collateral); <u>Anyaibe</u> v. <u>Gilbert</u>
> <u>Security Service, Inc.</u>, 1995 WL 322452, at *5 (D.D.C.
> 1995) (pattern or practice claim must involve more than
> one employee and be raised in EEOC charge); <u>see</u> <u>also</u> B.
> Schlei & P. Grossman, Employment Discrimination Law
> 1322 & n. 95 (2d ed. 1983 (pattern or practice claims
> involve classwide claims).

<u>Oliver-Simon</u> v. <u>Principi</u>, Slip op. at 8.

This case is *not*, nor can it be, construed to be, a pattern-and-practice case.  It was neither brought by the Government nor was it brought as a class action seeking class-wide relief. Since the Supreme Court's decision in <u>Morgan</u>, 536 U.S. at 112-13, courts have refused to allow non-class action private plaintiffs to use <u>Bazemore</u> v. <u>Friday</u>, 478 U.S. 385 (1986), to circumvent Title VII's time-bar.  <u>E.g.</u>, <u>Cherosky</u> v. <u>Henderson</u>, 330 F.3d 1243 (9th Cir. 2003) (refusing to allow non-class action private plaintiffs to use <u>Bazemore</u> to revive action time-barred under <u>Morgan</u>).  In the case at bar, Plaintiff is a single litigant asserting claims on behalf of himself only.  This case is not a class action, and Plaintiff did not file an administrative complaint as a class action.  <u>See</u> Plaintiff's Administrative

-16-

Complaint, attached as Exhibit B; see also 29 C.F.R. § 1614.204
(setting forth detailed requirements for pursuing administrative
class action complaints).  Further, in this lawsuit, it appears
that Plaintiff has premised his claims on 42 U.S.C. § 2000e-
16(c), the provision of Title VII allowing private suits by
individual litigants.  See Complaint, ¶¶ 1-5; compare 42 U.S.C. §
2000e-6(c) (allowing Attorney General to bring civil action
against employer engaged in "pattern or practice" of
discrimination).  Thus, Plaintiff's complaint cannot be
characterized as a "pattern-or-practice" complaint; even if it
could be, Plaintiff is not authorized to bring such a complaint.
As in Thompson, Plaintiff cannot avoid Morgan by belatedly
attempting to attach the "pattern-or-practice" label to his
complaint.

     Notably, the core of the complaint is that Plaintiff was
allegedly discriminated against in five specific ways.  See
Complaint, ¶¶ 15-28.  In any event, were there in existence a
system of discrimination that amounts to a "pattern-or-practice,"
it would be the proper subject of a class action claim, such as
the one previously filed by Plaintiff and others.

     The court in Haynie v. Veneman, 272 F.Supp. 2d 10 (D.D.C.
2003), declined to permit a plaintiff to use Bazemore to evade
the limitations period, reasoning that "[a]lthough plaintiff
alleges that defendant engaged in a 'pattern of racial

discrimination". . . directed against [plaintiff] and members of
his family, . . . this is not the type of claim intended by the
[Morgan] Court's reference to 'pattern-and-practice'
claims. . . . [T]he core of plaintiff's challenge is defendant's
individualized discrimination against her and her family, not a
'pattern-and-practice' claim to which the exception suggested in
Morgan might apply."  Haynie, 272 F. Supp. 2d at 17, n.4.  Accord
Cherosky, 330 F.3d at 1248 ("we note that it would eviscerate
Morgan's premise to circumvent the timely filing requirements
merely because a plaintiff alleges that the acts were taken
pursuant to a discriminatory policy.").

    A recent instructive Tenth Circuit decision held that Morgan
barred individualized claims of discrimination such as that
pressed by Plaintiff here.  Davidson v. America Online, Inc., 337
F.3d 1179, 1186 (10th Cir. 2003) ("The essence of [plaintiff's]
complaint does not stem from the hiring policy, but rather from
the individualized refusals to hire that resulted from
implementation of the policy.  His assertion that these discrete
acts flow from a company-wide or systemic discriminatory practice
will not succeed in establishing AOL's liability for acts
occurring outside the limitations period because the Morgan Court
determined that each incident of discrimination constitutes a
separate actionable unlawful employment practice.").  For these
reasons, Plaintiff's pattern and practice claim should be

dismissed and the allegations related to the claim stricken from
the Complaint.

> E.  Counts II and  III Would Be Subsumed in His Prior
> Class Action and Are Thus Barred by the Settlement in
> <u>That Case, by Collateral Estoppel And/or Res Judicata.</u>

Under the related doctrines of <u>res</u> <u>judicata</u> and collateral
estoppel, a final judgment on the merits of an action precludes
the parties from relitigating issues that were or could have been
finally decided; and once a court has decided on issue of fact or
law necessary to its judgment, that decision may preclude
relitigation of the issue in a suit on a different cause of
action involving a party to the first action.  <u>Allen</u> v. <u>McCurry</u>,
449 U.S. 90, 94 (1980); <u>United States</u> v. <u>Mendoza</u>,  464 U.S. 154,
158 (1984); <u>Montana</u> v. <u>United States</u>, 440 U.S. 147, 153 (1979);
<u>American Employers Insurance Company</u> v. <u>American Security Bank</u>,
747 F.2d 1493, 1498 (D.C. Cir. 1984); <u>I.A.M. National Pension</u>
<u>Fund</u> v. <u>Industrial Gear Manufacturing Company</u>, 723 F.2d 944, 947
(D.C. Cir. 1983);  <u>see</u> <u>also</u>  <u>Cutler</u> v. <u>Hayes</u>, 549 F. Supp. 1341,
1343 (D.D.C. 1983), <u>aff'd</u> <u>in</u> <u>part</u>, <u>rev'd</u> <u>in</u> <u>part</u> 818 F.2d 879,
888 (D.C. Cir. 1987).

Application of the doctrine of collateral estoppel
"represents a decision that the needs of judicial finality and
efficiency outweigh the possible gains of fairness or accuracy

from continued litigation of an issue that previously has been considered by a competent tribunal." Nasem v. Brown, 595 F.2d 801, 806 (D.C. Cir. 1979).  The doctrine thereby serves to relieve parties of the burdens attending multiple lawsuits; conserves judicial resources; minimizes the risk of forum-shopping, piecemeal litigation, and inconsistent decisions; and provides finality in the resolution of disputes.  United States v. Mendoza, 464 U.S. 154, 158 (1984); Cutler v. Hayes, 549 F. Supp. at 1343; see Hardison v. Alexander, 655 F.2d 1281, 1288 (D.C. Cir. 1981); see also SBC Communications Inc. v. FCC, 407 F.3d 1223, 1229-30 (D.C. Cir. 2005) (describing distinctions between claim preclusion and issue preclusion).

    In this action, Plaintiff admits that he was a named plaintiff in the earlier class action that involves many of the same allegations and evidence he now seeks to present again.  See Complaint, ¶¶ 7-14, 35, 38; see also Emmanuel Johnson, Jr. v. Attorney General of the United States, Civil Action No. 93-0206 TFH (Complaint, ¶ 8); Exhibit C; Exhibit D1 at 2-3, 7; Exhibit D2 at 1, 12.  Such conduct is not permitted when one has settled, released and previously litigated a matter.  Id.; Allen v. McCurry, 449 U.S. at 94; SBC Communications Inc. v. FCC, 407 F.3d at 1229-30; Emmanuel Johnson, Jr. v. Ashcroft, Civil Action No. 04-1158, 2005 WL 2073752, at *1 n.3, *6 - *7 (D.D.C. Aug. 17, 2005).

IV.  CONCLUSION

WHEREFORE, plaintiff's Complaint should be dismissed or summary judgment should be granted in favor of defendant.

Respectfully submitted,

_____
KENNETH L. WAINSTEIN, DC Bar #451058
United States Attorney

_____
R. CRAIG LAWRENCE, DC Bar #171538
Assistant United States Attorney

_____
W. MARK NEBEKER, DC Bar #396739
Assistant United States Attorney

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DONOVAN J. LEIGHTON,              )
                                 )
          Plaintiff,             )
                                 )
     v.                          ) Civil Action No. 05-1835 HHK
                                 )
ALBERTO GONZALES,                )
  U.S. Attorney General,         )
                                 )
          Defendant.             )
_____)

STATEMENT OF MATERIAL FACTS AS TO WHICH
THERE IS NO GENUINE ISSUE

Pursuant to Local Rule 7(h), the defendant hereby submits the following material facts as to which there is no genuine dispute:

1. In a formal EEO Complaint, Mr. Leighton alleged that on September 10, 2002, he met with Special Agent ("SA") Stephen Morris and found out that he was not chosen for the 45th Senior seminar because the Special Agent Mid-level Management Selection ("SAMMS") Board determined that the seminar was intended to be an "introductory course" for managers with no previous Legat Attache experience. See Exhibit B.

2. Mr. Leighton first contacted an EEO Counselor on October 11, 2002, with regard to this matter. See Exhibit B.

3. On November 25, 2002, Mr. Leighton filed the EEO complaint of discrimination alleging that the FBI discriminated against him based on his race (African-American) and reprisal when he was not selected to attend the 45th Session of the

Department of State Senior Seminar in May 2002.  <u>See</u> Exhibit B.

4.  On December 19, 2002, Mr. Leighton sent a letter to Ms. Valerie Venture, Equal Employment Officer, referencing a conversation he had with Ms. Lisa Owens on December 17, 2002.  On the referenced date, Mr. Leighton sought counseling concerning his non-selection for Legal Attache at Legat Manilla.  <u>See</u> Exhibit E.

5.  Mr. Leighton also stated that he had been informed that his former supervisor recommended  Mr. Leighton for an incentive award and that on December 18, 2002, the plaintiff learned that other employees had received their awards which indicated that his award was never processed.  <u>See</u> Exhibit E.

6.  Mr. Leighton asserted that the incentive award recommendation may not have been approved by an OIO Special Agency in Charge (SAC) Roderick L. Beverly, because the incontrovertible facts related in it would have contradicted information he provided to the SAMMS Board in connection with the Legat Manila selection.  <u>See</u> Exhibit E.

7.  In a January 28, 2003 letter, Ms.  Venture accepted for investigation of Complaint F-03-5733 the following allegations:

> Whether Mr. Leighton was discriminated against based on his race (African American) and reprisal when: on or about September 10, 2002, he learned that he was not selected to attend the 45th Session of the Senior Seminar, Foreign Service Institute, Department of State; and
>
> on or about December 18, 2002, he was not presented

-2-

with an incentive award. <u>See</u> Exhibit F.

8.   In that January 28, 2003 letter, Mr. Leighton was told to inform the EEO Office if he believed that the bases or allegations in his complaint had not been properly identified. <u>See</u> Exhibit F.

9.   Mr. Leighton did not object to the accepted bases or allegations.  <u>See</u> Exhibit F.

10.   On February 4, 2003, Mr. Leighton sent a letter to Ms. Venture regarding another instance of alleged discrimination when he was denied the opportunity to participate in a particular investigation, which he described as "top priority."  <u>See</u> Exhibit G.

11.   On February 4, 2003, Mr. Leighton sent another letter to Ms. Venture requesting that Ms. Venture address in connection with Complaint of Discrimination F-03-5733 the matter of his non-selection for Legal Attache Manila.  <u>See</u> Exhibit H.

12.   Mr. Leighton alleges that he first sought counseling on December 17, 2002, regarding the non-selection for transfer to Legat Manilla.  <u>See</u> Exhibit E.

13.  On February 13, 2003, Ms. Venture accepted for investigation the following additional issue:

> Whether Mr. Leighton was discriminated against based on race (African America) and reprisal when on or about December 17, 2002,  he learned that he was not selected for the position of Legal Attache, Legat Manilla.

Exhibit I.

14.  On Aril 7, 2003, Ms. Venture accepted for investigation the following additional issue:

> Whether Mr. Leighton was discriminated against based on race (African America) and reprisal when on or about March 28, 2003, he was denied the opportunity to participate in a top priority investigation.

See Exhibit J.

15.  On April 18, 2003, Mr. Leighton sent an letter to Ms. Venture requesting that another issue of alleged discrimination be addressed.  Specifically, Mr. Leighton stated that on April 1, 2003, he was subject to a malicious direct management referral to the Employee Assistance Program by Section Chief Michael Pyszymuka and Supervisory Special Agents Sandra Fowler and Walter Smith, ostensibly for anger management, but actually in retaliation for writing an e-mail protesting among other things, the treatment of OIO employees.  See Exhibit K.

16.  On May 6, 2003, Ms. Venture accepted for investigation the following additional issue:

> Whether Mr. Leighton was discriminated against based on race (African American) and reprisal when on or about April 1, 2003 he was subject of a direct management referral to the Employee Assistance Program for anger

-4-

management.

<u>See</u> Exhibit L.

17.  The letter further stated that Mr. Leighton believed that the referral was in retaliation for an e-mail he wrote protesting racially disparate treatment in the OIO.  <u>See</u> Exhibit L.

18.  On June 3, 2003, Mr. Leighton sent a letter to Ms. Venture, requesting that she address a further instance of apparent discrimination and reprisal regarding redacted information from an incentive award recommendation.  <u>See</u> Exhibit M.

19.  On June 24, 2003, Mr. Leighton sent a letter to Ms. Venture requesting she address a further instance of apparent discrimination and reprisal regarding remarks made to the Career Board concerning Mr. Leighton's interview which resulted in his non-selection for the position of SAC, San Francisco Division. <u>See</u> Exhibit N.

20.  On July 11, 2003, Ms. Venture informed Mr. Leighton that the issue addressed in his June 3 letter was not a new and separate issue, but was was evidence concerning the issue accepted for investigation regarding the incentive award.  <u>See</u> Exhibit O.

21.  With regard to the June 24, 2003 letter, and a June 27, 2003 e-mail clarifying the issue raised in the June 24th letter,

Ms. Venture informed Mr. Leighton that this non-selection was a separate and distinct claim and could not be amended to the current complaint.  <u>See</u> Exhibit O.

22.  That EEO complaint remains pending at the agency level. <u>See</u> Exhibit P.

23.  On November 24, 2004, the agency forwarded a copy of the completed investigation and informed Mr. Leighton of his options.  <u>See</u> Exhibit Q.

24.  On January 4, 2005, Mr. Leighton requested that the matter be referred to the Department of Justice for a final decision, and on June 7, 2005, the Department of Justice issued a final decision with regard to Mr. Leighton's case.  <u>See</u> Complaint, Attachment; Exhibit S (Declaration of Joyce Carson, ¶¶ 1-7 and Attachment).

25.  The Department of Justice found that Mr. Leighton was not discriminated against based on either race or retaliation. <u>Id</u>.

26.  The e-mail referred to by Plaintiff in paragraph 27 of the Complaint is attached as Exhibit A.  <u>See</u> Exhibit A.

27.  Plaintiff is a named plaintiff in the class action civil action filed in the District of Columbia:  <u>Emmanuel Johnson, Jr.</u> v. <u>Attorney General of the United States</u>, Civil Action No. 93-206 TFH (D.D.C.).  Complaint, ¶ 8; Exhibit C at 2-3, 7.

-6-

28.  True and accurate copies of certain filings in Emmanuel
Johnson, Jr. v. Attorney General of the United States, Civil
Action No. 93-206 TFH (D.D.C.) are attached as Exhibits C, D1 and
D2. See Exhibit C; Exhibit D1; Exhibit D2.

Respectfully submitted,


_____
KENNETH L. WAINSTEIN, DC Bar #451058
United States Attorney


_____
R. CRAIG LAWRENCE, DC Bar #171538
Assistant United States Attorney


_____
W. MARK NEBEKER, DC Bar #396739
Assistant United States Attorney

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that service of the foregoing Defendant's Motion To Dismiss Or, In The Alternative, For Summary Judgment, supporting memorandum, statement of material facts and proposed order has been made by mailing copies thereof to:

DONOVAN J. LEIGHTON
11101 Georgia Avenue
Apartment # 263
Wheaton, Maryland  20902

on this 19th day of December, 2005.

W. MARK NEBEKER, D.C. Bar #396739
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, DC  20530
(202) 514-7230